390 So.2d 704 (1980)
James E. DODSON and Lorraine L. Dodson, Petitioners,
v.
Charles L. PERSELL and United States Fidelity & Guaranty Company, Respondents.
No. 56116.
Supreme Court of Florida.
November 20, 1980.
Bill Hoppe and Mary Friedman of Colson & Hicks, Miami, for petitioners.
*705 Steven R. Berger of Carey, Dwyer, Cole, Selwood & Bernard, Miami, for respondents.
Larry Klein, West Palm Beach, for The Academy of Florida Trial Lawyers, amici curiae.
Joseph P. Milton, Jacksonville, for Jacksonville Defense Lawyers Association, amici curiae.
James E. Tribble and James C. Blecke of Blackwell, Walker, Gray, Powers, Flick & Hoehl, Miami, for The Florida Defense Lawyers Association, amici curiae.
OVERTON, Justice.
This is a petition for writ of certiorari to review the Third District Court of Appeal's decision reported at 365 So.2d 413 (Fla. 3d DCA 1979), and concerns the entitlement of a party to discover the existence and contents of surveillance films or photographs pursuant to the provisions of Florida Rule of Civil Procedure 1.280. There is clear conflict. The Third District Court of Appeal, both in the decision sought to be reviewed and in Collier v. McKesson, 121 So.2d 673 (Fla. 3d DCA 1960), has held that such films and photographs are protected from discovery by the "work product" privilege. The Fourth District, on the other hand, has held that the existence and contents of such materials are discoverable. Corack v. Travelers Ins. Co., 347 So.2d 641 (Fla. 4th DCA 1977); Spencer v. Beverly, 307 So.2d 461 (Fla. 4th DCA 1975). The First District Court has held that a party may discover the existence of surveillance films, but has not addressed the question of whether the films' contents are discoverable. Howard Johnson's Motor Lodges, Inc. v. Baranov, 379 So.2d 114 (Fla. 1st DCA 1979). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. (prior to April 1, 1980).
We resolve the conflict and hold, in summary, that (1) the existence of surveillance movies and photographs is discoverable in every instance; (2) the contents are discoverable if the materials will be used as evidence either substantively or for impeachment; (3) if the movies or photographs will not be used as evidence by the holder, the contents are discoverable only upon a showing of exceptional circumstances; (4) the party seeking discovery must be afforded a reasonable opportunity to observe the movies or photographs before their presentation as evidence; and (5) within the trial court's discretion, the surveilling party has the right to depose the party or witness filmed before being required to produce the contents of the surveillance information for inspection.
Petitioner Dodson's complaint alleges that respondent Persell negligently collided his automobile with the automobile of Dodson, causing Dodson serious injury. The record reflects that the petitioner, as plaintiff in the trial court, propounded interrogatories to discover whether surveillance of the petitioner had taken place, whether photographs or movies were taken, and, if so, the time and place taken, the substance of what the films purported to show, and the qualifications of the photographer. Additionally, petitioner properly requested production of any such photographs or films. Relying on the "work product" privilege, respondent objected to each of the interrogatories and the production request. The petitioner moved to compel production, but the trial court, after hearing, denied the motion and sustained respondent's objections. At trial, the respondent did in fact present both the testimony of its private investigator and surveillance materials which the court, over objection, admitted into evidence. The jury subsequently rendered its verdict for respondent, and the trial court entered judgment accordingly. On appeal, the Third District affirmed, holding that surveillance films may constitute work product and may be excluded from discovery on that basis. 365 So.2d at 413. We disagree and expressly disapprove this holding.
Petitioner contends that the existence and contents of surveillance films need to be disclosed prior to trial and must be treated like any other evidence in order to avoid misuse of the film. Petitioner cites Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148 (E.D.Pa. 1973), in which the court stated:

*706 [T]he camera may be an instrument of deception. It can be misused. Distances may be minimized or exaggerated. Lighting, focal lengths, and camera angles all make a difference. Action may be slowed down or speeded up. The editing and splicing of films may change the chronology of events. An emergency situation may be made to appear commonplace. That which has occurred once, can be described as an example of an event which recurs frequently. We are all familiar with Hollywood techniques which involve stuntmen and doubles. Thus, that which purports to be a means to reach the truth may be distorted, misleading, and false.
Id. at 150. Petitioner further asserts that if pretrial disclosure of surveillance films is not required, plaintiffs will be without means to effectively challenge or prepare rebuttal evidence against surveillance materials, citing the following statement by the Supreme Court of New Jersey in Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473 (1976):
The surprise which results from distortion of misidentification is plainly unfair. If it is unleashed at the time of trial, the opportunity for an adversary to protect against its damaging inference by attacking the integrity of the film and developing counter-evidence is gone or at least greatly diminished.
Id. at 57, 350 A.2d at 477. In short, the petitioner urges that we should side with the weight of authority by holding that surveillance movies must be treated as any other evidence which will be presented at trial.[1]
The respondents on the other hand contend that surveillance films and materials are protected by the work product privilege and consequently are not subject to discovery. The respondents assert that if a plaintiff is informed of the existence of surveillance materials and views the contents before trial, he will tailor his testimony to reconcile any possible inconsistencies. In respondents' view, allowing discovery would severely limit the impact that surveillance materials would have upon the jury and would practically eliminate surveillance as a means to prevent overstated and fraudulent claims. Respondents further contend that discovery of surveillance films is not necessary to eliminate surprise because the surveillance film involves facts more readily known by the plaintiff than the defendant and consequently there is no surprise.[2] In summary, the respondents assert that we should adopt the reasoning of Collier v. McKesson and hold that surveillance films which are to be used for impeachment purposes constitute work product and may be excluded from discovery.
This Court, as most jurisdictions, adopted discovery as part of our procedural rules to improve our system of justice. It is a tool intended (1) to identify at early stages of a proceeding the real issues to be resolved; (2) to provide each party with all available sources of proof as early as possible to facilitate trial preparation; and (3) to abolish the tactical element of surprise in our adversary trial process. In Surf Drugs, Inc. v. Vermette, 236 So.2d 108 (Fla. 1970), we stated that the primary purpose of our rules:

*707 is to prevent the use of surprise, trickery, bluff and legal gymnastics. Revelation through discovery procedures of the strength and weaknesses of each side before trial encourages settlement of cases and avoids costly litigation. Each side can make an intelligent evaluation of the entire case and may better anticipate the ultimate results.
Id. at 111. In Surf, we expressly set forth guidelines to determine which materials and information are subject to discovery and which are classified as falling within the work product privilege, stating:
[g]enerally, those documents, pictures, statements and diagrams which are to be presented as evidence are not work products anticipated by the rule for exemption from discovery. Personal views of the attorney as to how and when to present evidence, his evaluation of its relative importance, his knowledge of which witness will give certain testimony, personal notes and records as to witnesses, jurors, legal citations, proposed arguments, jury instructions, diagrams and charts he may refer to at trial for his convenience, but not to be used as evidence, come within the general category of work product.
Id. at 112. Further, in Surf we fully recognized the United States Supreme Court's landmark decision in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed.2d 451 (1947).[3]
A search for truth and justice can be accomplished only when all relevant facts are before the judicial tribunal. Those relevant facts should be the determining factor rather than gamesmanship, surprise, or superior trial tactics. We caution that discovery was never intended to be used and should not be allowed as a tactic to harass, intimidate, or cause litigation delay and excessive costs.
First, adhering to the philosophy expressed in Surf and in accordance with the majority view, we hold that upon request a party must reveal the existence of any surveillance information he possesses whether or not it is intended to be presented at trial. What we require is that a party must disclose the existence of material which is or may be relevant to the issues in the cause whether as substantive, corroborative, or impeachment evidence. Relevant evidence cannot be allowed to remain hidden in a party's or an attorney's files. Knowledge of its existence is necessary before a judicial determination can be made as to whether the contents are privileged.
Second, we hold the contents of surveillance films and materials are subject to discovery in every instance where they are intended to be presented at trial either for substantive, corroborative, or impeachment purposes. Any work product privilege that existed for the contents ceases once the materials or testimony are intended for trial use. More simply, if the materials are only to aid counsel in trying the case, they are work product. But, if they will be used as evidence, the materials, including films, cease to be work product and become subject to an adversary's discovery.
Third, in limited instances, the contents of surveillance materials that are not intended to be submitted as evidence are subject to discovery if they are unique and otherwise unavailable, and materially relevant to the cause's issues. An example is a photograph of a scene which has been changed or cannot be reproduced.[4] The *708 philosophy of this type of discovery was clearly expressed in Hickman v. Taylor, where the Court stated:
We do not mean to say that all written materials obtained or prepared by an adversary's counsel with an eye toward litigation are necessarily free from discovery in all cases. Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had. Such written statements and documents might, under certain circumstances, be admissible in evidence or give clues as to the existence or location of relevant facts. Or they might be useful for purposes of impeachment or corroboration. And production might be justified where the witnesses are no longer available or can be reached only with difficulty.
329 U.S. at 511, 67 S.Ct. at 394. This type of discovery, however, is of limited application. Clearly, one party is not entitled to prepare his case through the investigative work product of his adversary where the same or similar information is available through ordinary investigative techniques and discovery procedures.
Fourth, with reference to our holding that a party is entitled to discover the existence and contents of surveillance information which will be used as evidence, it necessarily follows that the seeking party must be afforded a reasonable opportunity to view the surveillance information before trial. The surveilling party's failure to comply with such a discovery request will bar the information's use as evidence in the cause unless the trial court finds that the failure to disclose was not willful and either that no prejudice will result or that any existing prejudice may be overcome by allowing a continuance of discovery during a trial recess.
Fifth, we recognize that there is some merit in respondent's contention that surveillance can prevent fraudulent and overstated claims. In this regard, fairness requires that we allow the use of surveillance materials to establish any inconsistency in a claim by allowing the surveilling party to depose the party surveilled after the movies have been taken or evidence acquired but before their contents are presented for the adversary's pretrial examination. We note that under present procedural time constraints, the surveilling party in a personal injury action ordinarily has the opportunity to take discovery in this manner without any court order. In our view, the trial court's discretion to allow the discovery deposition before disclosure is an appropriate middle road to ensure that all relevant evidence reaches the trier of fact in a fair and accurate fashion. See Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473 (1976).
For the reasons expressed, we quash the instant decision of the Third District Court of Appeal and disapprove its decision in Collier v. McKesson, 121 So.2d 673 (Fla. 3d DCA 1960), and remand the cause with directions to grant a new trial. To the extent that they are in accord with this opinion, we approve the decisions of the district courts of appeal in Howard Johnson's Motor Lodges, Inc. v. Baranov, 379 So.2d 114 (Fla. 1st DCA 1979); Corack v. Travelers Insurance Co., 347 So.2d 641 (Fla. 4th DCA 1977); Spencer v. Beverly, 307 So.2d 461 (Fla. 4th DCA 1975).
It is so ordered.
SUNDBERG, C.J., and ADKINS, BOYD, ENGLAND and ALDERMAN, JJ., concur.
NOTES
[1] See Martin v. Long Island RR., 63 F.R.D. 53 (E.D.N.Y. 1974); Blyther v. Northern Lines, Inc., 61 F.R.D. 610 (E.D.Pa. 1973); Snead v. American Export-Isbrandtsen Lines, Inc., 59 F.R.D. 148 (E.D.Pa. 1973); Zimmerman v. Superior Court, 98 Ariz. 85, 402 P.2d 212 (1965); Crist v. Goody, 31 Colo. App. 496, 507 P.2d 478 (1972); Olszewski v. Howell, 253 A.2d 77 (Del. Super. 1969); Boldt v. Sanders, 261 Minn. 160, 111 N.W.2d 225 (1961); Jenkins v. Rainner, 69 N.J. 50, 350 A.2d 473 (1976). Cf. Hughes v. Groves, 47 F.R.D. 52 (W.D.Mo. 1969) (addresses photographs generally).
[2] See Hikel v. Abousy, 41 F.R.D. 152 (D.Md. 1966); State ex rel. St. Louis Pub. Serv. Co. v. McMillian, 351 S.W.2d 22 (Mo. 1961). Cf. Bogatay v. Montour Ry., 177 F. Supp. 269 (W.D. Pa. 1959) (surveillance materials not used as evidence or used exclusively for impeachment not discoverable). See generally Note, Procedure-Production of Surveillance Material-Interrelationship of Discovery & the Prevention of Fraud, 51 Iowa L.Rev. 769 (1966).
[3] In Hickman, the Supreme Court originally recognized the work product exception that certain materials prepared by an attorney in the anticipation of litigation may be protected from discovery. This Court has clearly accepted the reasoning in Hickman. Pinellas County v. Carlson, 242 So.2d 714 (Fla. 1971); Surf Drugs, Inc. v. Vermette, 236 So.2d 108 (Fla. 1970); Shell v. State Rd. Dept., 135 So.2d 857 (Fla. 1961); Seaboard Air Line Ry. v. Timmons, 61 So.2d 426 (Fla. 1952); McGee v. Cohen, 57 So.2d 658 (Fla. 1952); Miami Transit Co. v. Hurns, 46 So.2d 390 (Fla. 1950); Atlantic Coast Line R.R. v. Allen, 40 So.2d 115 (Fla. 1949).
[4] Accord, Florida Rule of Civil Procedure 1.280(b)(3)(B), which provides that a party may discover his adversary's expert's opinion where it would be impracticable to obtain an opinion on the same subject by other means. But cf. Pinellas County v. Carlson, 242 So.2d 714 (Fla. 1971); Shell v. State Rd. Dept., 135 So.2d 857 (Fla. 1961) (holding that government experts' opinions in condemnation proceedings are subject to discovery even though not intended as evidence, exception to general rule).