SMITH, Senior Judge.
The employer and carrier (E/C) seek reversal of a worker’s compensation order granting temporary partial disability and other benefits on the ground that the judge of compensation claims erred in excluding a surveillance videotape and certain expert testimony based on the surveillance tape. We affirm.
The claimant suffered a compensable injury on May 27, 1991, and received benefits and treatment therefor until March 20, 1992. Since September 11, 1991, the claimant had been under the care of Dr. Antonio Certo, M.D., who believed claimant’s condition was consistent with Reflex Sympathetic Dystrophy (RSD). On March 17, 1992, Dr. Certo was shown a surveillance videotape by the E/C’s representative. Prior to the viewing, Dr. Certo believed claimant was incapable of returning to her former employment, but Dr. Certo found claimant’s activities on the surveillance tape to be inconsistent with claimant’s presentation at his office. Thus, on April 1, 1992, without further examination of the claimant, Dr. Certo told her that he no longer felt comfortable treating her and advised that he believed she was capable of returning to her former job. In Dr. Certo’s deposition, taken on July 9, 1992, he stated that his diagnosis changed from RSD to a “resolved pain problem.” He placed claim *14 ant at maximum medical improvement (MMI) on April 1, 1992 with no permanent impairment and no restrictions.
Dr. Uricchio, who did not personally examine claimant, reviewed the surveillance videotape in mid-July, 1992. He stated that he did not know how the tape got into his offiee, but that one of his employees simply came back and handed the tape to him.
On April 22,1992, claimant filed a claim for benefits; that claim was later amended on July 28,1992. On May 1,1992, claimant filed a discovery request specifically seeking, among other things, the surveillance videotape. This discovery request was followed by a letter from claimant’s counsel to the E/C’s counsel, dated May 22, 1992, requesting the “videotaped surveillance,” among other things. Counsel for the E/C responded by letter June 3, 1992, that “[p]ursuant to Rule 4.090(g), videotapes, surveillance is not properly discoverable at this time.”
During Dr. Certo’s deposition, claimant interposed an objection to any testimony regarding the surveillance tape based, in part, on Perez v. Eastern Airlines, 569 So.2d 1290 (Fla. 1st DCA 1990), regarding ex parte communications by the E/C with claimant’s physician. Claimant’s counsel noted that the claimant had not yet viewed the surveillance tape at the time of the July 9th deposition. The claimant had been deposed June 25, 1992. During the testimony of Dr. Uricchio, in September 1992, claimant’s counsel again objected to any testimony concerning the surveillance evidence.
A pretrial stipulation was executed on July 13, 1992. The surveillance tape was not listed as an exhibit, but the E/C listed, as one of its witnesses, “surveillance Rep.” A hearing on the claim was initially scheduled for October 28, 1992, but in September 1992, the hearing was continued until December 1, 1992.
By letter dated October 13, 1992, the E/C advised claimant’s counsel that the videotape was now available for viewing. Claimant’s counsel responded by letter that he would not view the tape at that late date inasmuch as the videotape had not been timely produced, that counsel believed it had been used in violation of Perez, as indicated during the doctors’ depositions, and that an objection was being made to the use of the tape at trial.
At the hearing, the JCC took up the claimant’s motion to strike portion of Dr. Certo’s deposition testimony relating to the claimant’s April 1, 1992 visit at which Dr. Certo stated that he did not wish to treat claimant further after viewing the surveillance tape. Also at issue was whether the surveillance tape would be admissible at the final hearing.
The JCC reviewed the factual events up to the date of the merits hearing and received legal argument. The JCC deferred ruling on the matter, but in the final order, the JCC did strike portions of Certo’s deposition and disallowed the surveillance tape. In so ruling, the JCC stated:
In considering the Employee’s argument to quash the use of the videotape at hearing and its use in showing it to Dr. Certo without advising the Employee’s Attorney, I find this to be a valid basis to quash the videotape as evidence in this cause. The Employer/Carrier’s failure to disclose and furnish the videotape to the Employee’s Attorney was a willful violation of discovery rules Virginia Williams v. [Walt Disney World], [583 So.2d 794] (Fla. 1st DCA 1991). I find that the videotape was discoverable once it was apparent that the Employer/Carrier intended to use the videotape as evidence or contemplated its use, which was certainly prior to October, 1992, some two (2) weeks before the original date of the hearing in this cause. I find the Employer/Carrier’s argument that it was not aware that it intended to use the videotape and that when it was shown to Dr. Certo, it was not accompanied by commentary to be ludicrous.
I also find the Employer/Carrier failed to apprise the Employee’s Attorney of its intent to use the videotape in an obvious effort to change the opinion of Dr. Certo, to be [in] violation of both the rules of discovery and the principles of the Adelman Steel Corp. v. [Winter], [610 So.2d 494] (Fla. 1st DCA 1992) case. Thus I agree with the Employee’s counsel’s argument, that the blatant discovery violation *15 of the Employer/Carrier was wilful and tainted the testimony of Dr. Certo, after the date he saw the videotape.
The E/C urges on appeal that the JCC erred in relying upon Williams v. Walt Disney World, in finding a “willful” discovery violation. The E/C urges further that the JCC erred in quashing the tape on the authority of Perez v. Eastern Airlines, Inc., supra, and Adelman Steel Corp. v. Winter, supra. We disagree.
Under Perez (which was not cited in the order under review but was cited to the JCC at the merits hearing), and Adelman, ex parte communications by the E/C’s representatives with the claimant’s medical providers is not prohibited prior to the existence of an adversarial relationship between the E/C and the claimant. In Adelman, we held that the filing of a claim marked the beginning of the adversarial relationship. We did not preclude, however, a holding that the furnishing of surveillance videotapes to a claimant’s physician might also evidence the beginning of an adversarial relationship where, as here, the tape has not been made available to the claimant. We further note that in this case, although the tape was shown to Dr. Certo prior to the filing of a claim, the tape was viewed by Dr. Uricchio long after the claim was filed, and after the time for production under claimant’s request had expired. While Dr. Uricchio did not state that the tape was furnished to him by the E/C, it does not strain credulity to assume that the tape made its way to Dr. Urieehio’s office through the actions, directly or indirectly, of the E/C. Whether or not the ex parte showing of surveillance videotapes to the claimant’s physician must be deemed, by its very nature, adversarial as a matter of law, such practice does not appear authorized by the limited exception to the confidentiality requirements of section 455.241(2), Florida Statutes, found in section 440.13(2)(f), which provides for the furnishing of medical records to the E/C’s representatives and for discussions concerning “the medical condition of the injured employee ... restricted to conditions relating to the workplace injury....” In our view, the statute obviously contemplates the receipt of medical information from the physician or other medical care provider, and it just as obviously does not contemplate an ex parte “mini-trial” before the health care provider, or the deliberate undermining of the doctor-patient relationship.
It is apparent from the order under review that the JCC suppressed the surveillance evidence on two grounds. First, relying upon Williams, the JCC found a willful violation by the E/C in not offering the videotape until October 1992. Second, the JCC found that the E/C’s failure to inform the claimant’s counsel of its intent to use the videotape in an obvious effort to change the opinion of Dr. Certo was in violation of the discovery rules and the principles of Adelman Steel Corp.
In Williams v. Walt Disney World, this court observed that Rule 4.090(g) is a codification of the decision in Dodson v. Persell, 390 So.2d 704 (Fla.1980), which held that surveillance is subject to discovery under the rules of civil procedure, and that failure to comply with the rules of discovery “pre-elude[s] use of such evidence at trial unless the court found that failure was not willful, and that either (1) no prejudice would result, or (2) any existing prejudice would be overcome by allowing a continuance of discovery during a trial recess.” 583 So.2d at 795. (Emphasis added). The rule established in Williams mandates exclusion of surveillance evidence when the discovery violation is found to have been willful. The facts in Williams, which this court found to constitute a willful violation, do not constitute the only set of facts which will justify a finding of a willful discovery violation. Accordingly, we are not persuaded by the ■ E/C’s attempt on appeal to factually distinguish Williams as a basis for reversal.
Similarly, the fact that Perez and Adelman Steel Corp. may be factually distinguishable is also not a basis for overturning the order under review. As suggested above, the JCC’s reliance on Adelman was in addition to his finding that the E/C violated “the rules of discovery.” Thus, the question remaining is whether the E/C did violate the rules of discovery.
Rule 4.090(g), Florida Rules of Workers’ Compensation Procedure, provides:
*16 Surveillance. The evidence of any investigator, adjustor, or other witness in the nature of surveillance shall be subject to discovery when such evidence will be used at trial, provided the party intending to use such evidence is first given a reasonable opportunity to depose the party or witness who is the subject of the surveillance.
As noted above, the claimant sought the surveillance videotape in mid-May 1992 and was advised by the E/C that the request was untimely at that time. The claimant was deposed on June 25, 1992. Still, there was no offer to view the videotape until October.[1] In view of the timing of the request for production of the surveillance, the obvious disregard of the local rule in existence at the time,[2] the fact that the claimant was deposed in June, and claimant’s counsel’s specific objection concerning the non-production of the tape during the depositions of Dr. Certo in July and Dr. Uricchio in September 1992, the E/C’s failure to tender production of the tape until October was properly considered a violation of discovery rules.
Rule 4.150, Florida Rules of Workers’ Compensation, provides that “failure to comply with the provisions of these rules or any order of the judge of compensation claims may subject a party to reprimand, striking of briefs or pleadings, denial of oral argument, dismissal of proceedings, imposition of costs, attorney fees, or other such sanction as the judge of compensation claims shall deem appropriate.” This rule was added in 1979, and according to the committee notes, was modeled after Florida Rule of Appellate Procedure 9.410. Thus, separate and apart from the case law cited above warranting exclusion of surveillance evidence not properly disclosed, the JCC was empowered by Rule 4.150 to sanction the E/C.
Finally, we do not find that the result here is affected by our recent decision .in Ogden Allied Services v. Panesso, 619 So.2d 1023 (Fla. 1st DCA 1993). The videotapes in Ogden were not in existence when the discovery request was made, and were being used solely for impeachment or rebuttal. Here, surveillance tapes were in existence when the discovery request was made, and the tapes were being used by the E/C to influence the opinion of the medical witnesses during the on-going pre-trial stages of the case, even to the point of persuading Dr. Certo to discontinue his treatment of the claimant. We find the facts here to be materially at variance with those in Ogden.
Accordingly, the order under review is AFFIRMED.
BARFIELD and LAWRENCE, JJ., concur.

. Both parties have conceded the existence and applicability of a local rule which requires the request for production to be considered a continuing request. We do not address -the issue of the validity of a local rule which is in conflict with the Florida Rules of Workers’ Compensation Procedure.

. The E/C’s contention that it complied with this rule by offering the tapes in October 1992 is unconvincing.