NORTHCUTT, Judge.
This case stems from the collision between a motorcycle and a car in an intersection. Max Carpenter was driving the motorcycle, and his wife Rebecca was riding on the back. The Carpenters were proceeding straight through the intersection from the west. Robert Shaver drove his car into the intersection from the east and was attempting to make a left turn. The motorcycle hit the car and both of the Carpenters were injured. They sued Shaver for their damages flowing from his alleged negligence.
At trial, the jury awarded damages to the Carpenters and found that Shaver was 95% at fault for the collision and Max Carpenter was 5% at fault. But we conclude that the verdict was tainted by evidence that the trial court should have excluded. First, the court allowed a trooper to give an opinion about which driver violated the right of way; and second, it permitted the plaintiffs’ counsel to read Shaver’s answers to surveillance interrogatories to the jurors. Therefore, we must reverse for a new trial. This ruling moots Shaver’s challenges to the damages awarded, so we will not discuss those issues.
The parties’ relative fault for the accident was hotly contested at trial. Shaver, admitted that he bore some responsibility for the collision, but he posited that he was already in the intersection when the traffic signal turned red and that Carpenter should not have proceeded through the intersection against the red light. The Carpenters maintained that the accident was entirely Shaver’s fault because he failed to yield the right-of-way. The evidence regarding the status of the signal at the time of the accident was inconclusive. The court instructed the jurors that the *307 violation of a traffic law is evidence of negligence, and it read the following statutes:
Vehicle turning left. — The driver of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction, or vehicles lawfully passing on the left of the turning vehicle, which is within the intersection or so close thereto as to constitute an immediate hazard.
§ 316.122, Fla. Stat. (2008).
Green indication.—
1. Vehicular traffic facing a circular green signal may proceed cautiously straight through or turn right or left unless a sign at such place prohibits either such turn. But vehicular traffic, including vehicles turning right or left, shall yield the right-of-way to other vehicles and to pedestrians lawfully within the intersection or an adjacent crosswalk at the time such signal is exhibited.
§ 316.075(l)(a).
Over Shaver’s objections, a trooper who assisted in the accident investigation was permitted to testify that Shaver violated Carpenter’s right-of-way and that Carpenter did not violate Shaver’s right-of-way. This was error.
In Hernandez v. State Farm Fire & Casualty Co., 700 So.2d 451 (Fla. 4th DCA 1997), the circuit court allowed an officer who had been at the scene of the accident to testify at trial that Hernandez violated the other driver’s right-of-way. The Fourth District held that jurors “should not be informed of the investigating officer’s determination of who caused the accident and who was cited.” Id. at 452; see also Galgano v. Buchanan, 783 So.2d 302, 304 (Fla. 4th DCA 2001) (holding that a party was deprived of a fair trial when the
investigating officer was allowed to testify that he issued a citation for violation of the right-of-way and the party paid the citation); Albertson v. Stark, 294 So.2d 698, 699 (Fla. 4th DCA 1974) (remarking that, to the average juror, the investigating officer’s decision whether to charge one driver or the other with a traffic violation “is very material to, if not wholly dispositive of, that juror’s determination of fault on the part of the respective drivers”).
In Hernandez, as in this case, the law enforcement officer did not testify whether any citations were issued or not issued. But that is of no import when the officer’s testimony clearly suggests who would have been cited and who would not have been. See 700 So.2d at 452; see also Spanagel v. Love, 585 So.2d 317, 318 (Fla. 5th DCA 1991) (stating that while neither side asked the officer whether a party had been charged in connection with the accident, the officer’s testimony that the party had not engaged in any improper driving would cause any reasonable person to believe he had not been).
The trial court in this case erred in allowing the officer to testify that Shaver violated the right-of-way and that Carpenter did not. We reverse the judgment in favor of the Carpenters and remand for a new trial.
We must also address another evi-dentiary issue. The trial court permitted the Carpenters’ counsel to publish to the jury Shaver’s interrogatory answers concerning the defense’s surveillance of the Carpenters. In the answers, Shaver disclosed that the two plaintiffs had been surveilled on eight days, from mid-May to early-June, 2009. But defense counsel advised the court that he did not intend to introduce the surveillance videos at trial or present any testimony concerning surveillance. He argued that the interrogatory answers should not be permitted in evi *308 dence because they were not relevant or material to the Carpenters’ case. The only purpose for doing so, he said, would be to disparage Shaver by showing that he was spying on the Carpenters or “something of that nature.” And, as counsel predicted, in closing argument the Carpenters’ attorney reminded the jury:
They surveilled them ten times on ten different days with a spy film trying to catch them doing something as if they were to say, you’re li[a]rs, you’re cheaters, you’re fakes, you’re frauds. These two people (indicating) that were incredibly injured.
We’re not talking about a soft tissue rear-end wimpy case with no other damage to another vehicle. That’s not it. But even right now, they’re still being followed. They get — they get followed in this kind of case.
Answers to interrogatories certainly may be introduced into evidence. See Fla. Std. Jury Instr. (Civ.) 301.1; Silvers v. Wal-Mart Stores, Inc., 826 So.2d 513 (Fla. 4th DCA 2002) (stating that an interrogatory answer was admissible as substantive evidence where the answer demonstrated that Wal-Mart had knowledge of a dangerous condition). But, as with all evidence at trial, the answers must be relevant, i.e., “tending to prove or disprove a material fact.” § 90.401, Fla. Stat. (2008); cfi Silvers, 826 So.2d at 514 (noting that the defendant admitted in the interrogatory answer that it had notice of water on its floor, which the plaintiff claimed caused her to slip and fall). Neither the circuit court nor this court was presented with any reason why this answer was relevant to any issue in the lawsuit.[1]
Rather, plaintiffs’ counsel used this evidence to denigrate Shaver, implying that the surveillance activity was unsavory and indicative of a dismissive attitude toward the plaintiffs. To the contrary, surveillance is a common practice in personal injury cases and is not improper. As the supreme court remarked in Dodson v. Persell, 390 So.2d 704, 708 (Fla.1980), “surveillance can prevent fraudulent and overstated claims.” The Dodson court also explained that videos are discoverable if they are relevant to the issues at trial, whether as substantive, corroborative, or impeachment evidence, and can be presented at trial for those purposes. Id. at 708.
Whereas Dodson addressed the discovery and admissibility of the videos themselves, nothing in our record indicates that the videos in this case were ever subject to discovery because Shaver did not intend to introduce them at trial. The issue here is whether the court properly permitted evidence simply that the surveillance was undertaken. Because that fact was not relevant to any issue, the court should not have done so.
Reversed and remanded for a new trial.
ALTENBERND and VILLANTI, JJ., Concur.

. Even one of the jurors was confused about the relevance of the interrogatory answers. She told the court: "I'm not exactly sure what that presentation related to, so if we could get a little bit more information about what that — what that was that you presented so we can understand it.”