# Third District Court of Appeal

## State of Florida

Opinion filed December 17, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1775
Lower Tribunal No. 19-10020-CA-01
_____

**Marine Design Dynamics, Inc.,**
Appellant,

vs.

**All City Construction Services, LLC,**
Appellee.


An Appeal from the Circuit Court for Miami-Dade County, Lourdes Simon, Judge.

The Bravo Law Firm, PLLC and Jason Bravo, for appellant.

Silverberg & Weiss, P.A., and Kraig S. Weiss (Fort Lauderdale), for appellee.


Before EMAS, LOBREE and GOODEN, JJ.

EMAS, J.

## INTRODUCTION

The action below arises out of a 2017 Joint Venture Agreement (Agreement) between Marine Design Dynamics, Inc. (Marine Design) and All City Construction Services, LLC (All City). This is the second time the case has come before our court. The first time, Marine Design appealed a summary final judgment; this court affirmed in part, reversed in part, and remanded for further proceedings. This time, Marine Design appeals from a final judgment following a nonjury trial. To the extent our earlier decision is relevant to the instant appeal, we address it together with the pertinent background and procedural history of the case and, for the reasons that follow, we affirm the trial court's final judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

For context pertinent to the issues raised by Marine Design, we begin with the following excerpt from our opinion in the first appeal:

> In 2017, Marine Design contracted with the Federal Emergency Management Agency (FEMA) to provide charter vessels for hurricane relief efforts in the U.S. Virgin Islands and Puerto Rico. To finance the vessel procurement, Marine Design separately executed [the Agreement] with All City [] [], by which All City would provide an initial investment of $1,600,000 and receive 40% share of the 'net profits' from the FEMA contract after expenses, as well as reimbursement to investment money. This agreement also included a clause providing that the contract would automatically terminate if FEMA ceased its need for the services sought for the venture.

Marine Design Dynamics, Inc. v. All City Constr. Servs., LLC, 345 So. 3d 956, 957-58 (Fla. 3d DCA 2022) (Marine Design I). FEMA cancelled the contract before Marine Design could perform under the contract, and later "reimburse[d] Marine Design for $1,329,517.85 in reasonable charges demonstrated." Id.

Upon learning of the FEMA payment, All City requested its 40 percent share of those funds, asserting those monies constituted "net profits" under the Agreement. Marine Design refused, and All City filed the underlying breach of contract lawsuit, alleging Marine Design improperly kept the entire FEMA payment. The dispute between the parties centered on the nature of the FEMA payment, and whether All City was entitled to any portion of the FEMA payment under the terms of the Agreement.

All City eventually moved for summary judgment, asserting it was entitled to $531,807.12 because the FEMA payment constituted "net profits" under the Agreement. The trial court granted the motion and entered judgment for All City. In doing so, the trial court rejected Marine Design's contention that the FEMA payment was not subject to the 60/40 profit split because the payment was not net profits but rather a "termination for convenience fee" for reasonable charges incurred by Marine Design.

3

Marine Design appealed the summary judgment, and this court affirmed in part, and reversed in part:

> The plain language of the contract supports the trial court's determination that the payments at issue constitute "net profits." However, the final judgment fails to account for permissible deductions under the same contractual provision for expenses incurred. Accordingly, **we affirm the summary judgment order but vacate the final judgment to permit further proceedings to determine what, if any, monies should be deducted from the payment at issue before allocating All City's contractual share.**

Marine Design I, 345 So. 3d at 957 (emphasis added). In short, this court affirmed the trial court's determination that, under the terms of the Agreement, the payment constituted net profits, but reversed for the trial court to consider any proper deductions from that payment.

On remand, the trial court entered a pretrial order, setting the case for nonjury trial and establishing deadlines for filing an exhibit list and a witness list (e.g., 45 days before the Monday of the trial period). All City filed its exhibit list and witness list in compliance with the pretrial order. It is undisputed that Marine Design never filed an exhibit list or a witness list.

The trial court held a nonjury trial on the applicability of permissible deductions under the Agreement. All City's position remained the same—that no deductions applied, and that Marine Design carried the burden to "provide evidence as to what expenses are deductible" under the

4

Agreement. All City also pointed out that Marine Design failed to submit a witness list or an exhibit list, and that such failure prejudiced All City because it did not know, and could not reasonably prepare to rebut, the evidence Marine Design intended to submit and rely upon at trial. Accordingly, All City moved to prohibit Marine Design from seeking to introduce any exhibits or calling any witnesses at trial, given Marine Design's failure to comply with the court's pretrial order.

The trial court ruled that it would determine prejudice on an "exhibit-by-exhibit basis [] to see what it is in fact that you've uploaded and make a determination if there's a prejudice due to the lateness of the discovery." Review of the trial transcript establishes Marine Design sought to introduce only two exhibits: the first (an email) was admitted by the trial court and the second (the expense sheet) was excluded by the trial court based on Marine Design's failure to comply with the pretrial order and the resulting prejudice to All City.

Only two witnesses testified at trial. All City presented testimony from Gilad Goldenholz, president of All City, who testified the joint venture never expended any money, and he had never seen an itemization of any expenses from Marine Design. He further testified All City was not

responsible for Marine Design's overhead expenses under paragraph 3 of the Agreement.[1]

Marine Design presented testimony from Sebastian Phillips, president of Marine Design. He testified that the FEMA payment was always intended for only Marine Design (the bidder). He clarified that Marine Design was entitled to $1.1 million of the $1.3 million FEMA payment for "sustaining the company and winning that contract, and that with the additional funds, the remaining funds to be split between us and All City."

During Phillips' testimony, Marine Design sought to introduce the expense sheet, contending it was provided during financial discovery related to two years of collection efforts. All City objected to its admission based on Marine Design's failure to submit an exhibit list or provide the document to All City prior to trial. In response to the trial court's direct question on prejudice, counsel for All City explained:

> Well Judge, I don't know what this exhibit is. I don't know what this exhibit represents. We don't seem to have any—I don't know its origin. I don't know who wrote it. I don't know who compiled it. There is no metadata that is— this isn't a chart of any metadata that is in evidence. So it's just —it has no reliability whatsoever.

---

[1] Paragraph 3 of the Agreement provides: "The Venture shall not be responsible for any expenses, except as detailed in the contract for the vessels and prior to any additional expense being taken on or otherwise agreed to, the Parties shall vote on the same. *Neither Party shall charge any overhead or other expense to the Venture*." (Emphasis added).

As to the question of procedural prejudice, counsel for All City advised the trial court:

> [H]ad I been made aware that this was going to be an exhibit today, I could have gone through it, itemized it, and you know, made myself more familiar with it in order to ask the relevant questions on it. But because this is the first time I'm being shown this, here at trial, I am not afforded that opportunity.

Counsel for All City further advised the court he had no recollection of having received the document during discovery. Marine Design did not contend otherwise, and acknowledged that the document did not contain a Bates number or other evidence tending to establish it was provided during discovery.

Ultimately, the trial court permitted the witness to answer questions about Marine Design's expenses (and allowed the witness to review the document to refresh his recollection), but denied admission of the expense sheet given the late disclosure and resulting prejudice.

At the conclusion of the bench trial, the trial court entered judgment for All City, finding that there were no permissible deductions for expenses incurred, and that therefore no amounts would be deducted from All City's 40 percent share ($531,807.12) of the FEMA payment to which All City was entitled under the Agreement. The trial court cited paragraph 3 of the Agreement—precluding either party from charging any overhead and

7

requiring the parties to vote on any expenditures—to find that the payment constituted net profits, not venture expenditures: "The Court finds that there was no evidence prov[ing] that the expenses were of the joint venture, so the $1,329,517.85 is net profits and there are no expenses to be deducted from the full amount and it is subject to the 60/40 profit sharing split that is set forth in the JVA." The trial court entered final judgment for All City.

Marine Design moved for a new trial, arguing the exclusion of the documentary evidence was "erroneous and prejudicial." The trial court denied the motion. This appeal followed.

## STANDARD OF REVIEW

Generally, a trial court's ruling on the admissibility of evidence is reviewed for an abuse of discretion. Montero v. Corzo, 320 So. 3d 976, 977 n.1 (Fla. 3d DCA 2021) (citing State v. Martin, 277 So. 3d 265, 268 (Fla. 3d DCA 2019)). Review of an order denying a motion for new trial, and review of a trial court's decision enforcing its pretrial order, are also reviewed for an abuse of discretion. Gutierrez v. Vargas, 239 So. 3d 615, 622 (Fla. 2018) ("A trial court's enforcement of its own pretrial order is reviewed for abuse of discretion, and reversal is appropriate only when the affected party can clearly show the abuse resulted in unfair prejudice.") (citing Binger v. King

<u>Pest Control</u>, 401 So. 2d 1310, 1313 (Fla. 1981)); <u>Id.</u> at 621 ("A trial court's decision not to grant a new trial is reviewed for abuse of discretion.").

**<u>DISCUSSION AND ANALYSIS</u>**

Marine Design raises three issues on appeal: (1) whether the trial court erred in rejecting Marine Design's exhibits, despite Plaintiff's actual possession and prior knowledge of the documents; (2) whether the denial of Marine Design's exhibits "constituted harmful error requiring a new trial"; and whether Marine Design's Motion for New Trial "identified any valid grounds under Rule 1.530 to warrant rehearing or reversal."

At the core of these arguments is whether the trial court erred in denying admission of the expense sheet where Marine Design failed to comply with the trial court's pretrial order, which required each party to submit an exhibit list. Marine Design contends the trial court failed to consider prejudice in barring the evidence. <u>Montero</u>, 320 So. 3d at 979-80 ("The failure of a party to properly disclose evidence 'will bar the information's use as evidence in the cause unless the trial court finds that the failure to disclose was not willful and either that no prejudice will result or that any existing prejudice may be overcome by allowing a continuance of discovery during a trial recess.'") (quoting <u>Dodson v. Persell</u>, 390 So. 2d 704, 708 (Fla. 1980)); <u>see also</u> <u>Binger</u>, 401 So. 2d at 1314 (holding trial court has discretion

9

to exclude testimony from an undisclosed witness but, in doing so, it should be guided by whether allowing admission of the evidence will prejudice the objecting party: "Prejudice in this sense refers to the surprise in fact of the objecting party, and it is not dependent on the adverse nature of the testimony. Other factors which may enter into the trial court's exercise of discretion are: (i) the objecting party's ability to cure the prejudice or, similarly, his independent knowledge of the existence of the witness; (ii) the calling party's possible intentional, or bad faith, noncompliance with the pretrial order; and (iii) the possible disruption of the orderly and efficient trial of the case (or other cases).[] If after considering these factors, and any others that are relevant, the trial court concludes that use of the undisclosed witness will not substantially endanger the fairness of the proceeding, the pretrial order mandating disclosure should be modified and the witness should be allowed to testify."); Montero, 320 So. 3d at 980 ("[I]t is incumbent upon the trial court to analyze these Binger factors before exercising its discretion to admit or exclude late-disclosed exhibits or witness testimony. This court has previously held that a trial court's failure to do so will result in reversal.").

Marine Design's contention is belied by the record, which establishes that the trial court did not simply issue a blanket ruling excluding Marine

Design's exhibits as a sanction for its failure to comply with the court's pretrial order. Instead, the trial court individually considered Marine Design's exhibits and the prejudice All City would suffer from admission of each one.

It is clear the trial court exercised its broad discretion, and in fact allowed one of Marine Design's exhibits (the email) to be admitted into evidence after All City acknowledged the document had been disclosed during the discovery process. In disallowing the expense sheet, however, the trial court concluded there was no proof Miami Design had disclosed the document during discovery. Counsel for All City confirmed it had never seen the document and argued admission of the document would result in substantial prejudice under <u>Binger</u>, given the absence of any underlying indicia of reliability or knowledge of who compiled the data from which the document was created. Notably, the trial court nevertheless permitted Marine Design to use the expense sheet to refresh its witness' recollection during his testimony related to expenses.[2]

Marine Design's contention also fails in light of this court's decision in <u>Marine Design I</u>, where this court specifically found that the FEMA payment constituted net profit under the Agreement:

---

[2] We further note that Marine Design did not request a recess of the trial as an alternative to exclusion of the exhibit.

Accordingly, while the parties disagree about whether the payment constituted profit earned through partial performance, a mere termination for convenience fee, or something else, this distinction makes no difference under the definition of "net profits" in the contract.

Marine Design I, 345 So. 3d at 959. To the extent Marine Design resurrects its contention in Marine Design I— that the FEMA payment was not net profits subject to the 40 percent split under the Agreement, but rather a "termination for convenience fee" to cover its overhead costs—such argument is barred by law of the case. See Florida Dept. of Transp. v. Juliano, 801 So. 2d 101, 105-06 (Fla. 2001) ("The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings.") (citing Greene v. Massey, 384 So. 2d 24, 28 (Fla.1980)) ("All points of law which have been adjudicated become the law of the case and are, except in exceptional circumstances, no longer open for discussion or consideration in subsequent proceedings in the case.").

## **CONCLUSION**

The trial court properly considered the requisite Binger factors and exercised its sound discretion in deciding whether to admit or exclude certain exhibits at trial as a result of Miami Design's failure to comply with the court's pretrial order requiring the filing of an exhibit list. We find no abuse of

12

discretion in the trial court's determinations, and affirm the final judgment and the trial court's order denying Marine Design's motion for new trial.

Affirmed.

LOBREE, J., concurs

GOODEN, J. (specially concurring)

This case revolves around <u>Binger v. King Pest Control</u>, 401 So. 2d 1310 (Fla. 1981)—a cornerstone of Florida's jurisprudence since 1981. Seasoned trial lawyers know its prejudice analysis and how to effectively navigate its contours when faced with undisclosed or late-disclosed evidence, witnesses, or testimony.

Yet, the Florida Supreme Court recently made substantial strides in streamlining litigation. <u>See</u> <u>In re Amends. to Fla. Rules of Civ. Proc.</u>, 402 So. 3d 925 (Fla. 2024), <u>as corrected</u> (Jan. 23, 2025); <u>In re Amends. to Fla. Rules of Civ. Proc.</u>, 386 So. 3d 497 (Fla. 2024); <u>In re Workgroup on Improved Resol. of Civ. Cases</u>, Fla. Admin. Order No. AOSC19-73 (Oct. 31, 2019). It has charted a course for trial judges to actively manage cases, set firm deadlines, and strictly enforce them. <u>See</u> Fla. R. Civ. P. 1.200(d)(3) ("*Strict Enforcement of Deadlines.* The case management order must indicate that the deadlines established in the order will be strictly enforced unless changed by court order."); <u>id.</u> at (e)(1) ("*Deadlines are Strictly Enforced.*

13

Deadlines in a case management order must be strictly enforced unless changed by court order.").  This includes the completion of fact and expert discovery.  Id. at (d)(2).

But these changes are incompatible with Binger.[3]  The core tension is self-evident: A judge cannot simultaneously "strictly enforce" the discovery deadline, as the Rules now demand, while also applying a prejudice analysis, that functionally excuses the violation of that very deadline.  Id. at 1313–14.

Binger, at its core, subverts the new procedural mandates.  It stands as a direct obstacle to "active case management of civil cases with a focus on adhering to deadlines established early."  In re Amends. to Fla. Rules of Civ. Proc., 386 So. 3d 497, 499 (Fla. 2024).  To that end, Binger v. King Pest Control should be reexamined.

---

[3] This is further highlighted by Rule 1.200 providing the parties an avenue to modify the deadlines and Rule 1.280 imposing a duty to supplement initial disclosures and discovery responses.  See Fla. R. Civ. P. 1.200(e); Fla. R. Civ. P. 1.280(g)(1).