236 So.2d 108 (1970)
SURF DRUGS, INC., a Florida Corporation, Petitioner,
v.
Raymond L. VERMETTE, Respondent.
No. 39182.
Supreme Court of Florida.
May 6, 1970.
*109 Samuel Z. Goldman, of Green & Hastings, Miami, for petitioner.
*110 Simons & Schlesinger, Hollywood, for respondent.
BOYD, Justice.
This cause is before us on petition for writ of certiorari to review the decision of the District Court of Appeal, Third District.[1] Jurisdiction is based on conflict between the decision sought to be reviewed and the decision of this Court in Dupree v. Better Way.[2]
Respondent, plaintiff below, filed a complaint for the wrongful death of his wife, alleging that the defendant drug store, by its professional pharmacist, was guilty of malpractice in continuing to sell a medication for the use of the deceased without continued physician approval and that plaintiff's wife's death was the proximate result of the use of that medication. Defendant served plaintiff with a set of interrogatories which sought to determine plaintiff's witnesses and the existence of certain evidence. Plaintiff objected to interrogatories numbered 27, 28, 29, 30, 31, 35 and 36,[3] on the ground that "same called for information based upon the knowledge of plaintiff's attorney." Plaintiff objected to interrogatories numbered 37, 38, 39, 40, 41, 42, and 43,[4] on the ground that "same invades the work product of plaintiff's attorney."
The trial court denied plaintiff's objections to all of the interrogatories except interrogatory number 36. Plaintiff then filed petition for writ of certiorari with the District Court of Appeal and defendant cross-petitioned.
The District Court reversed in part and affirmed in part, holding:
(1) Interrogatories numbered 27, 28, 29, 30, 31 and 35 "improper as to that portion of the interrogatories that required *111 the plaintiff to respond on behalf of his agent, attorney, servant, employee, etc., as to knowledge of certain facts and conclusions."
(2) Interrogatories 37, 38, 39, 40, 41, 42 and 43 proper and response required.
(3) Interrogatory 36, improper and objection sustained.
In the Dupree case, supra, the following interrogatory to the plaintiff was allowed:
"Please set forth the names and addresses of any other persons believed by you or known by you or your attorney to have knowledge concerning facts pertaining to the accident."
This Court held that the matter sought was not privileged and not protected as work product, stating:[5]
"* * * Under Rule 1.27 of the Florida Rules of Civil Procedure, F.S.A., a party may be interrogated as to `any matters which can be inquired into under Rule 1.21(b)'; and under Rule 1.21(b) `any persons, including a party,' may be examined `regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * * including * * * the identity and location of persons having knowledge or relevant facts.' The interrogatory here in question is well within the `Scope of Examination' permitted by Rule 1.21(b), supra, and the petitioner's attorney could not have refused to comply with the rule, had the information been sought by proceeding under Rule 1.21 to take the deposition of petitioner's attorneys."
The District Court in the instant case held that plaintiff could not be required to respond on behalf of his attorney. This holding clearly conflicts with the decision of this Court in the Dupree case.
The relevant Florida Rules of Civil Procedure are, 30 F.S.A, in pertinent parts, as follows:
"Rule 1.340 * * * Any party may serve upon any other party written interrogatories to be answered by the party served * * * who shall furnish such information as is available to the party. * * *
"Interrogatories may relate to any matters which can be inquired into under Rule 1.280(b) * * *."
Rule 1.280(b);
"Scope of Examination. Unless otherwise ordered by the court as provided herein, the deponent may be examined regarding any matter, not privileged, which is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the examining party or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents or other tangible things and the identity and location of persons having knowledge of relevant facts. It is not ground for objection that the testimony will be inadmissible at the trial if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence."
A primary purpose in the adoption of the Florida Rules of Civil Procedure is to prevent the use of surprise, trickery, bluff and legal gymnastics. Revelation through discovery procedures of the strength and weaknesses of each side before trial encourages settlement of cases and avoids costly litigation. Each side can make an intelligent evaluation of the entire case and may better anticipate the ultimate results. Florida has recognized four exceptions to the general rule requiring complete disclosure:
(1) The subject matter of the discovery procedure must be relevant to the cause.[6]
(2) Discovery procedures may not be used or conducted to harass or embarrass *112 litigants or witnesses or for malicious purposes.[7]
(3) The inquiry must not invade the ancient and necessary right of privileged communications between lawyers and clients.[8]
(4) The work product of the litigant, his attorney or agent, cannot be examined, absent rare and exceptional circumstances.[9]
What constitutes "work product" is incapable of concise definition adequate for all occasions. Generally, those documents, pictures, statements and diagrams which are to be presented as evidence are not work products anticipated by the rule for exemption from discovery. Personal views of the attorney as to how and when to present evidence, his evaluation of its relative importance, his knowledge of which witness will give certain testimony, personal notes and records as to witnesses, jurors, legal citations, proposed arguments, jury instructions, diagrams and charts he may refer to at trial for his convenience, but not to be used as evidence, come within the general category of work product.
The work-product doctrine originated in the case of Hickman v. Taylor,[10] wherein it was held that statements of witnesses secured by an attorney in advance of trial were immune from discovery because such a procedure would be contrary to the public policy underlying the orderly prosecution and defense of legal claims. The United States Supreme Court stated the reason for the work product doctrine as follows:[11]
"Historically, a lawyer is an officer of the court and is bound to work for the advancement of justice while faithfully protecting the rightful interests of his clients. In performing his various duties, however, it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways  aptly though roughly termed by the Circuit Court of Appeals in this case as the `Work product of the lawyer.' Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."
The work product doctrine was recognized in Florida in Atlantic Coast Line R. Co. v. Allen.[12] Subsequent developments were outlined in the decision of this Court in Shell v. State Road Department.[13]
*113 Appellee and the District Court apparently consider that anything known to an attorney for a litigant constitutes "work product" immune from discovery procedures. This view is clearly contrary to the Hickman case, supra, wherein the United States Supreme Court stated flatly:[14]
"A party clearly cannot refuse to answer interrogatories on the ground that the information sought is solely within the knowledge of his attorney."
Commenting on this statement, Moore in his treatise on federal practice, noted that it was sound doctrine, stating:[15]
"In other words, probably by properly phrased interrogatories a party can be required to state the substance of interviews with witnesses, whether obtained by his attorney or by others and whether or not reduced to writing. The party cannot refuse to answer on the ground that he has no personal knowledge of the facts, but must obtain the information from his attorneys or agents."
We hold, therefore, that a party may be required to respond on behalf of himself, his attorney, agent, or employee and to divulge names and addresses of any person having relevant information as well as to indicate generally the type of information held by the person listed. A party may not be required to set out the contents of statements, absent rare and exceptional circumstances, or to divulge his or his attorneys' evaluation of the substance of statements taken in preparation for trial. Applying these rules to the interrogatories in question, we find that the District Court correctly affirmed the action of the trial court in sustaining the objection to interrogatory number 36 set out, supra, at footnote 3. This interrogatory requires identification of any witness who has given an opinion to plaintiff or his attorney "that the defendant Surf Drugs, Inc., was negligent and careless," and exceeds the bounds of proper discovery because it requires an evaluation of the witnesses' testimony. That portion of the District Court's opinion holding that plaintiff cannot be required to respond on behalf of his agent, attorney, employee, etc., on interrogatories numbered 27, 28, 29, 30, 31 and 35, is erroneous and must be quashed.
Neither party to this cause has questioned that portion of the District Court's opinion ruling on interrogatory number 23.[16] In view of our decision herein, the holding of the District Court that interrogatory 23 be quashed must be modified. Plaintiff may properly be required to disclose whether to his or his attorney's knowledge, any doctor had given plaintiff's wife a disability rating and if so the name and address of that doctor. Absent exceptional circumstances, however, plaintiff is not required to give the percentage or nature of the disability rating or otherwise to summarize or evaluate the information available.
Accordingly, certiorari is granted, the decision of the District Court is quashed in part and affirmed in part and the cause remanded for further proceedings consistent herewith.
It is so ordered.
ERVIN, C.J., and ROBERTS, DREW and CARLTON, JJ., concur.
NOTES
[1] 226 So.2d 871 (Fla.App.3rd 1969).
[2] 86 So.2d 425 (Fla. 1956).
[3] "No. 27  State the exact names and addresses or information for the location of all persons known by you, your agents, or attorneys who were or purport to have been eyewitnesses to the within accident.

"No. 28  State the exact names and addresses or information for the location of all persons known by you, your agents, or attorneys who have any knowledge of the reasons for and/or cause of the death of Thelma Vermette.
"No. 29  State the exact names and addresses, or information for the location of all persons known by you, your agents, or attorneys who have any knowledge of the Plaintiff's claim for the death of Thelma Vermette.
"No. 30  Do you or your attorneys, agents, servants or employees know of the existence of any photographs of the scene of the within accident, the instrumentalities involved, or of the persons involved? If so:
(a) State the name and address of the person or persons who took the various photographs.
(b) Indicate adjacent to each such person's name and address listed in (a) above, whether each photograph was taken independently of (photographer not employed by) your attorneys, agents, servants, or employees, or which photographs were taken at the request of your attorneys, agents, servants, or employees, giving the date all photographs were taken.
(c) Indicate the subject matter of each photograph.
"No. 31  State whether you or any of your employees, agents, servants, or attorneys have obtained any written statements from anyone with regard to this incident.
"No. 35  Did the Plaintiff himself, or anyone on his behalf, inquire of, or have any conversation with any officer, director or employee of the Defendant, concerning the matters set forth in the Complaint; and if so, state the names and addresses of each such person, and state fully their relationship to the Plaintiff.
"No. 36  State the name and address of any witness, expert or lay, who has advised said Plaintiff, or who has given an opinion to said Plaintiff, or to counsel for said Plaintiff, that the Defendant Surf Drugs, Inc., was negligent and careless."
[4] "No. 37  State the name and address of any witness who will testify to the allegations set forth in Paragraph 3 of the Complaint." [Interrogatories No. 38, 39, 40, 41, 42, and 43 are the same except they refer to other paragraphs of the Complaint.]
[5] Dupree v. Better Way, 86 So.2d 425, 426 (Fla. 1956).
[6] Fla.R.C.P. 1.280(b) (1969).
[7] Fla.R.C.P. 1.310(b), 1.340 (1969.)
[8] 32 Fla.Jur. Witnesses §§ 144-151 (1961).
[9] Miami Transit Co. v. Hurns, 46 So.2d 390, 391 (Fla. 1950).
[10] 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).
[11] Id. at 510, 67 S.Ct. at 393.
[12] 40 So.2d 115 (Fla. 1949).
[13] 135 So.2d 857 (Fla. 1962).
[14] Hickman v. Taylor, 329 U.S. 495, 504, 67 S.Ct. 385, 390 (1947).
[15] 4 Moore, Federal Practice, p. 1435 (1969).
[16] "No. 23  To your knowledge, or that of your attorney, did any doctor ever assign a disability rating to your wife, either on a temporary or permanent basis? If so, state the percentage given and the name of the doctor giving same, whether such disability rating was temporary or permanent."