865 So.2d 1267 (2004)
Leonard NORTHUP, Petitioner,
v.
Herbert W. ACKEN, M.D., P.A., Respondent.
No. SC02-2435.
Supreme Court of Florida.
January 29, 2004.
*1268 Scott M. Whitley of Morgan, Colling and Gilbert, P.A., Tampa, FL, for Petitioner.
Richard E. Ramsey and Michael R. D'Lugo of Wicker, Smith, O'Hara, McCoy, Graham & Ford, P.A., Orlando, FL, for Respondent.
PER CURIAM.
We have for review the decision in Herbert W. Acken, M.D., P.A. v. Northup, 827 So.2d 1070 (Fla. 2d DCA 2002), which certified conflict with the decision in Gardner v. Manor Care of Boca Raton, Inc., 831 So.2d 676 (Fla. 4th DCA 2002). We have jurisdiction, see art. V, § 3(b)(4), Fla. Const., and quash the decision below.

Facts and Procedural History
The instant discovery dispute arose within an action for medical malpractice filed by the petitioner, Leonard Northup, alleging that the respondent, Dr. Herbert Acken, failed to diagnose a cancerous tumor which resulted in the death of petitioner's wife. See Acken, 827 So.2d at 1071. Pursuant to the trial court's pretrial case management order, the petitioner submitted a witness and exhibit list to the court, which included Dr. Michael Dillon as an expert witness, in November of 2000. See id. In the process of litigation preparation, the respondent's attorneys gathered deposition testimony Dr. Dillon had previously given in unrelated civil actions. Subsequently, the petitioner served a Request for Production upon respondent which sought copies of the deposition testimony transcripts possessed by defense counsel. See id. The respondent filed an objection to this request, asserting that the depositions requested were exempt from disclosure under the attorney work product doctrine. See id. The petitioner then moved to compel production, requesting that the trial court order the respondent to produce the entirety of the depositions and sworn statements of Dr. Dillon in the possession of defense counsel. See id.
Although not in the district court's opinion, the record reveals that during the hearing on the motion to compel, it was the specifically stated position of defense counsel that Dr. Dillon had been deposed in this case and that the defense intended to impeach him during trial with the use of the deposition transcripts defense counsel had previously secured but refused to disclose. Defense counsel asserted that he was entitled to, and intended to, use the deposition transcripts to impeach Dr. Dillon during trial but the defense was not required to disclose or produce the transcripts until during the trial when the transcripts would be actually used. It was defense counsel's position that the petitioner was not entitled to information concerning the prior depositions or copies of the transcripts until after the impeachment occurred during trial.
Following this hearing on the matter, the trial court granted the petitioner's motion and ordered the respondent to produce copies of the depositions and other documents. Thereafter, Dr. Acken filed a petition for writ of certiorari in the Second District arguing that disclosure of the deposition transcripts would reveal counsel's mental impressions regarding the relative importance of various issues at trial as well as counsel's strategy for trial, and thereby invade the work product of counsel. Counsel specifically took the position that he was not required to produce the depositions even if he used them as impeachment at trial and specifically attempted to distinguish Dodson v. Persell, 390 So.2d 704 (Fla.1980).
Dr. Acken relied on Smith v. Florida Power & Light Co., 632 So.2d 696 (Fla. 3d DCA 1994), for the proposition that the collected deposition transcripts were protected *1269 from disclosure as attorney work product, even though the defense intended to use them at trial for impeachment. The Second District agreed and quashed the trial court's order, but certified conflict with Gardner, 831 So.2d at 676, writing:
The facts of the case at bar may be closer to those in Gardner than those in Smith because there must be a "finite" number of depositions that Dr. Dillon has given in prior cases. However, we question whether Smith and Gardner can be reconciled. We adopt the rationale in Smith, and, applying that rationale here, conclude that the group of Dr. Dillon's prior depositions that Dr. Acken's counsel has collected to impeach Dr. Dillon is attorney work product, which is not subject to disclosure. To the extent that Gardner would dictate a contrary result, we certify conflict.
Acken, 827 So.2d at 1072. This Court granted review on March 20, 2003. See Northup v. Acken, 842 So.2d 845 (Fla. 2003) (table).

Analysis
In its 1947 opinion in Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), the United States Supreme Court originated what has become known as the "attorney work product privilege." With words which have not lost their poignancy, the Court concluded:
In performing his various duties, ... it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible waysaptly though roughly termed ... the "work product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served.
Id. at 510-11, 67 S.Ct. 385. In accordance with this reasoning, the United States Supreme Court established the "privacy of [an attorney's] professional activities," id. at 513, 67 S.Ct. 385, and foreclosed discovery of materials created by an attorney in preparation for litigation absent "adequate reasons to justify production." Id. at 512, 67 S.Ct. 385.
This Court's decision in Surf Drugs, Inc. v. Vermette, 236 So.2d 108 (Fla.1970), provides the established bedrock principles applicable in considering the attorney work product privilege in Florida.[1] In Surf Drugs, this Court addressed interrogatory questions, but expressed the broad balancing considerations involved in the *1270 discovery and litigation process. This court recognized:
A primary purpose in the adoption of the Florida Rules of Civil Procedure is to prevent the use of surprise, trickery, bluff and legal gymnastics. Revelation through discovery procedures of the strength and weaknesses of each side before trial encourages settlement of cases and avoids costly litigation. Each side can make an intelligent evaluation of the entire case and may better anticipate the ultimate results.
Surf Drugs, 236 So.2d at 111. In placing the work product protection within the scope of discovery, the Court stated:
What constitutes "work product" is incapable of concise definition adequate for all occasions. Generally, those documents, pictures, statements and diagrams which are to be presented as evidence are not work products anticipated by the rule for exemption from discovery. Personal views of the attorneys as to how and when to present evidence, his evaluation of its relative importance, his knowledge of which witness will give certain testimony, personal notes and records as to witnesses, jurors, legal citations, proposed arguments, jury instructions, diagrams and charts he may refer to at trial for his convenience, but not to be used as evidence, come within the general category of work product.
Id. at 112 (emphasis supplied). Pertinent to the instant action is the holding in Surf Drugs that the scope of the attorney work product privilege protection is specifically bounded and limited to materials which are not intended for use as evidence or as an exhibit at trial. See id. at 112.
This precept was recognized, expanded upon, and specifically enunciated in our later decision in Dodson v. Persell, 390 So.2d 704 (Fla.1980). In addressing the petitioner's contention that surveillance video recordings in the possession of the respondent were discoverable and not protected under the work product privilege, this Court made the following potent statement:
Any work product privilege that existed... ceases once the materials or testimony are intended for trial use. More simply, if the materials are only to aid counsel in trying the case, they are work product. But, if they will be used as evidence, the materials ... cease to be work product and become subject to an adversary's discovery.
Id. at 707. Thus, in accordance with Surf Drugs and Dodson, we reiterate our dedication today to the principle that in Florida, when a party reasonably expects or intends to utilize an item before the court at trial, for impeachment or otherwise, the video recording, document, exhibit, or other piece of evidence is fully discoverable and is not privileged work product.
In essence, Florida litigants must make a simple and discrete decision prior to entry of a pretrial case management order by the trial court. An attorney must evaluate whether he or she intends to use evidence in his or her possession for strategy and trial preparation purposes only, which would qualify the selection of the particular items as a protected product of the thought processes and mental impressions of an attorney. On the other hand, if the evidence or material is reasonably expected or intended to be disclosed to the court or jury at trial, it must be identified, disclosed, and copies provided to the adverse party in accordance with the trial court's order and the discovery requests of the opposing party.
The instant case is clearly governed by this principle. At the hearing before the trial court regarding the instant discovery dispute, Dr. Acken's attorney *1271 specifically submitted the following argument:
There's no procedure that says that a party is entitled to get impeachment materials which are not evidence before trial. That's obviously work product.
....
These are depositions which are going to be used for impeachment. They're not evidence at trial. So therefore they don't go on a witness list, they don't have to be produced to the other side. Classic impeachment materials would be these depositions. That's why there's no case law on this topic because clearly this is protected by work product privilege and should not be produced.
The clearly erroneous position of the respondent in the trial court was that he was totally free to use depositions at trial and read portions thereof in the presence of the jury without ever disclosing the depositions until the impeachment actually occurred during trial. We conclude and specifically announce today that all materials reasonably expected or intended to be used at trial, including documents intended solely for witness impeachment, are subject to proper discovery requests under Surf Drugs, Dodson, and a host of lower court decisions, and are not protected by the work product privilege. Florida's dedication to the prevention of "surprise, trickery, bluff and legal gymnastics," Surf Drugs, 236 So.2d at 111, at trial holds no exception for impeachment materials. Indeed, approval of the arguments submitted by the respondent would bring great harm upon and undermine the idea that in this State, litigants are entitled to evaluate "the strength and weaknesses of each side before trial" and have the ability to "make an intelligent evaluation of the entire case ... [to] better anticipate the ultimate results." Id. Trial by ambush is distant history, and it is clear that respondent had knowledge of the materials that would actually be used at trial.
In its decision below, the Second District concluded that the trial court's order compelling production of a discernible group of documents gathered by counsel "departed from the essential requirements of the law." Acken, 827 So.2d at 1071. The panel relied heavily upon Smith v. Florida Power & Light Co., 632 So.2d 696 (Fla. 3d DCA 1994), and concluded "that the group of Dr. Dillon's prior depositions that Dr. Acken's counsel has collected to impeach Dr. Dillon is attorney work product, which is not subject to disclosure." Id. at 1072. We approve this reasoning to the extent that it reiterates our longstanding jurisprudence regarding work product, as expressed in this opinion.
However, the Second District's analysis of the instant case cannot be approved solely within a "discovery vacuum." We note that the court declined to address the expected and intended use of Dr. Dillon's depositions at trial,[2] and instead examined an academic question: whether the gathering and review of Dr. Dillon's depositions could be protected as attorney work product. We agree that work product privilege could protect the depositions at issue from discovery, but only if the respondent never expected or intended to use them for impeachment at trial. Dodson and other decisions demand that evidence reasonably expected or intended for trial use be produced when requested. As noted above, the respondent in this case clearly intended to use portions of the depositions during trial. Thus, the Second District's decision is erroneous to the extent that it could *1272 be interpreted to insulate these depositions and preclude discovery until the actual testimony of Dr. Dillon is presented at trial.
On the other hand, we do not approve the broad sweep of the Fourth District Court of Appeal's decision in Gardner v. Manor Care of Boca Raton, Inc. The district court's approval in Gardner of an order requiring "counsel to `cull' through various surveys and personnel files to determine which ones are relevant," Gardner, 831 So.2d at 678, an action which the court admitted "may indicate counsel's strategy," id., goes entirely too far. The overriding touchstone in this area of civil discovery is that an attorney may not be compelled to disclose the mental impressions resulting from his or her investigations, labor, or legal analysis unless the product of such investigation itself is reasonably expected or intended to be presented to the court or before a jury at trial. Only at such time as the attorney should reasonably ascertain in good faith that the material may be used or disclosed at trial is he or she expected to reveal it to the opposing party. Because the Fourth District's Gardner decision conflicts with this principle, we must disapprove that portion of the opinion requiring counsel to evaluate the comparative relevance of documents for purposes of an opponent's discovery.

Conclusion
In accordance with the above analysis and conclusions, we quash the decision under review, Herbert W. Acken, M.D., P.A. v. Northup, 827 So.2d 1070 (Fla. 2d DCA 2002), but approve the reasoning to the extent that it reiterates the principles espoused in this opinion, and disapprove the portion of Gardner v. Manor Care of Boca Raton, Inc., 831 So.2d 676 (Fla. 4th DCA 2002), that is inconsistent with this opinion. Although not directly addressed by the Second District, we also explicitly hold that if attorney work product is expected or intended for use at trial, it is subject to the rules of discovery. Therefore, we also approve the order entered by the trial judge in this case and remand the instant cause to the trial court for further proceedings.
It is so ordered.
ANSTEAD, C.J., and WELLS, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
LEWIS, J., concurs in result only.
NOTES
[1] This Court first recognized the work product doctrine and privilege in Atlantic Coast Line R. Co. v. Allen, 40 So.2d 115 (Fla.1949).
[2] In a footnote, the Second District stated, "While the parties discussed the possible use of the depositions for impeachment at trial, the issue of whether such use is proper is not before us and we do not address it." Acken, 827 So.2d at 1071 n. 1.