889 So.2d 923 (2004)
Trena McGARRAH, individually and as mother and next friend of her minor children, Donovan Jackson, Gregory Fairrow, Ashley Fairrow, and Antwan Fairrow, and Gregory Fairrow, her husband, Petitioners,
v.
BAYFRONT MEDICAL CENTER, INC., Beers Construction Company, a foreign corporation, and HKS, INC., a foreign corporation, Respondents.
No. 2D04-1015.
District Court of Appeal of Florida, Second District.
December 15, 2004.
Rehearing Denied January 12, 2005.
*924 Brandon S. Vesely of Keane, Reese, Vesely & Gerdes, P.A., and Justin C. Johnson of Justin C. Johnson & Associates, P.A., St. Petersburg, for Petitioner.
John W. Boult of Barr, Murman, Tonelli, Slother & Sleet, Tampa, for Respondent Bayfront Medical Center, Inc.
Jeffery A. Froeschle and Heidi L. Hobbs of Bush Ross Gardner Warren & Rudy, P.A., Tampa, for Respondent HKS, Inc.
No appearance for Respondent Beers Construction Company.
VILLANTI, Judge.
Trena McGarrah, the plaintiff in a lawsuit alleging catastrophic neurological injury caused by the defendants' negligence, petitions this court for a writ of certiorari quashing the trial court's order allowing discovery of a videotape of a compulsory medical examination made at the direction of her attorney and not intended for use at trial. We grant the petition and quash the order below.
McGarrah sued Bayfront Medical Center, Inc., HKS, Inc., and Beers Construction Company after she slipped and fell while applying for a job at Bayfront on a ramped corridor designed by HKS and constructed by Beers. McGarrah alleged she had sustained severe neurological injuries, and defendant HKS therefore sought to subject McGarrah to a compulsory medical examination (CME) pursuant to Florida Rule of Civil Procedure 1.360. After some negotiations and without court order, the parties agreed that McGarrah could have a videographer record the CME. These negotiations did not specify or otherwise limit the purpose of the videographer's presence or the use to be made of the videotape.
After the CME was conducted, HKS served a request for production on McGarrah, seeking a copy of the videotape. McGarrah objected on the ground the videotape was protected from discovery because it was work product. Consequently, HKS moved to compel production of the videotape, arguing the videotape was not work product or, alternatively, that its need for the videotape overrode its privileged status.
At the hearing on the motion, both parties cited circuit court orders standing for conflicting propositions on the issue of whether a videotape of a CME was work product. In support of her position, McGarrah emphasized that the purpose of the videotape was to ensure that the neurologist had complied with the accepted standards for neurological examinations, particularly to ensure the CME was administered fairly. Because ensuring the CME was administered fairly and properly was the reason for videotaping it, the videographer was instructed to focus on the doctor, not McGarrah. The videotape was therefore not an impartial, objective depiction of what took place during the CME. Significantly, McGarrah's attorney stated his intent was not to use the videotape at trial "for any purpose, impeachment or otherwise."
The trial court granted the motion to compel, deciding that the videotape was not work product. Attached to its order *925 and adopted as reasoning was a thorough order written by Circuit Judge Anthony Rondolino in a recent case addressing a similar issue. Unlike this case, however, the plaintiff in Judge Rondolino's order was seeking prior court approval to have the CME videotaped and additionally to have it determined to be work product. The stated purpose of the videotape was to have the videographer be the attorney's "eyes and ears." In recognition of case law allowing the presence of a videographer at a CME, Judge Rondolino allowed the CME to be videotaped. Noting, however, that the policy behind allowing CMEs to be videotaped was to ensure fairness and avoid factual disputes, he emphasized the videographer should not attempt to create a biased record of the CME. Because this was not the plaintiff's opportunity to unilaterally make an unobjective record, Judge Rondolino determined both parties should have equal access to the videotape and that it should not be work product. This scenario stands in stark contrast to this case, where the videotape has already been made with the parties' consent and without any prior court order to limit the recording to an objective, unbiased depiction of the CME.
McGarrah now seeks a writ of certiorari quashing the order compelling the production of the videotape. Certiorari will lie to quash an order granting discovery when the order (1) departs from the essential requirements of the law, (2) resulting in material injury that (3) cannot be corrected on direct appeal. See, e.g., Parkway Bank v. Ft. Myers Armature Works, Inc., 658 So.2d 646, 648 (Fla. 2d DCA 1995). Orders granting discovery, including discovery of work product materials, are amenable to certiorari review because appeal after a final judgment in a case where discovery was improperly granted seldom provides adequate redress. Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995); Martin-Johnson, Inc. v. Savage, 509 So.2d 1097, 1099 (Fla.1987). We conclude that McGarrah has established that discovery of the videotape, if it is indeed work product, will result in material, irreparable injury.
Whether the videotape is work product also determines whether the trial court departed from the essential requirements of the law in ordering its discovery.[1] We begin by looking at the origin of the work product doctrine, first articulated by the Supreme Court in Hickman v. Taylor, 329 U.S. 495, 511, 67 S.Ct. 385, 91 L.Ed. 451 (1947):
Proper preparation of a client's case demands that [the attorney] assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, *926 statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways  aptly though roughly termed ... "[w]ork product of the lawyer." Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own.
In recognition of the importance of protecting work product-whether in the form of trial preparation materials or attorney thoughts and strategy-the Federal and Florida Rules of Civil Procedure include rules pertaining to the discovery of such material. Fed.R.Civ.P. 26(b); Fla. R. Civ. P. 1.280(b)(3). Florida Rule of Civil Procedure 1.280(b)(3) provides:
[A] party may obtain discovery of documents and tangible things... prepared in anticipation of litigation or for trial ... only upon a showing that the party seeking discovery has need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of the materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.
The rule distinguishes between materials prepared in anticipation of litigation or for trial  which may be discovered upon a showing of need and undue hardship in obtaining the substantial equivalent of the materials  and the mental impressions of the attorney, which receives heightened protection. See generally Hon. Thomas D. Sawaya, The Work-Product Privilege in a Nutshell, 67 Fla. B.J. 32, 33 (Aug.1993) (discussing the difference between "fact" work product and "opinion" work product).
The parties in this case have focused extensively on whether the videotape contains the mental impressions, opinions, and legal theories of McGarrah's attorney to bring it within the ambit of privileged work product. McGarrah argues that the positioning of the camera to focus primarily on the doctor is the product of her attorney's strategy, whereas HKS likens the videotape to a court reporter's unbiased transcript.[2] We do not think it is necessary to reach this argument because it is clear to us that the videotape, which was prepared pursuant to the instructions of McGarrah's counsel and not as an objective recording of the CME, falls under the category of materials prepared in anticipation of litigation or for trial. The CME is an adversarial proceeding: though it is a medical examination, it is one conducted at the request of the defendant and generally by the examiner of the defendant's choice. See, e.g., U.S. Sec. Ins. Co. v. Cimino, 754 So.2d 697, 701 (Fla.2000). In this case, the examiner was also designated as the expert who was to testify against McGarrah at trial. The videotape, accordingly, was made in anticipation of litigation or for trial and was not subject to discovery absent a showing of need and undue hardship.
The trial court did not consider HKS's need to obtain the videotape or whether its substantial equivalent could be obtained without undue hardship because it determined the videotape was not work product. *927 Because we conclude the videotape is protected work product, on remand, the trial court must determine whether HKS  through the CME examiner's affidavit  has met the standards for discovering the videotape despite its protected status.[3] If the trial court determines HKS is entitled to discovery of the videotape, the trial court must protect against revealing the attorney's mental impressions and strategies, if reflected in the videotape. We are aware that culling the substance from the strategy revealed through the camera lens may present a challenge.
Petition granted; order quashed; and cause remanded with directions.
NORTHCUTT and SILBERMAN, JJ., Concur.
NOTES
[1] We are mindful that attorney work product may be discovered by an opposing party if the product is "reasonably expected or intended to be presented to the court or before a jury at trial." Northup v. Acken, 865 So.2d 1267, 1272 (Fla.2004). Work product that is to be used  including for impeachment purposes  must be disclosed to the adverse party. Id. McGarrah has stipulated that she does not intend to use the videotape at trial, for impeachment or any other purpose. Therefore, the only question that remains is whether the videotape is work product. McGarrah appears to glean from Northup the idea that because the videotape is not to be used at trial, it is automatically protected work product. We do not read Northup that way. Northup simply reiterates the principle that material, even if it is work product, is subject to discovery if it is to be used at trial.
[2] HKS's attempt to liken the videotape to a court reporter's transcript is not particularly helpful to its argument because a transcript of a proceeding paid for by a party and made by a private, unofficial court reporter would not be discoverable by the adverse party. See McGee v. Cohen, 57 So.2d 658, 658-59 (Fla.1952).
[3] We have some concern that there are valid reasons why a defendant should not be able to obtain the substantial equivalent of a videotape of a CME  namely, that allowing defendants to view such videotapes would be like giving them unfettered attendance at the CME. Cf. Broyles v. Reilly, 695 So.2d 832, 834 (Fla. 2d DCA 1997) ("We note, however, that it would take an exceptional circumstance to permit anyone other than a videographer or court reporter and the plaintiff's attorney to be present on behalf of the plaintiff at a compulsory examination held pursuant to rule 1.360."). But because that issue is not before us, we decline to address it.