924 So.2d 887 (2006)
GRINNELL CORPORATION d/b/a Grinnell Fire Protection Systems Company, Inc., a Delaware corporation, Petitioner,
v.
The PALMS 2100 OCEAN BOULEVARD, LTD., a Florida Limited Partnership, Respondent.
No. 4D05-1963.
District Court of Appeal of Florida, Fourth District.
March 8, 2006.
Rehearing Denied April 19, 2006.
*889 David C. Willis and Wendy Vomacka of Rumberger, Kirk & Caldwell, Orlando, for petitioner.
William S. Spencer and Michael W. Marcil of Gunster, Yoakley & Stewart, P.A., Fort Lauderdale, for respondent.
EN BANC
GROSS, J.
Grinnell Corporation seeks certiorari review of a discovery order entered in the circuit court. We deny the writ in part because the discovery order required that interrogatory questions be answered in the manner contemplated by the rules of civil procedure. We grant the writ in part because the order required the respondent to organize and categorize documents and depositions already produced, contrary to the dictates of the Florida Supreme Court. We consider the case en banc to recede from certain language in Gabriel v. Northern Trust Bank of Florida, 890 So.2d 517 (Fla. 4th DCA 2005).
Respondent, The Palms 2100 Ocean Boulevard, Ltd., is one of two plaintiffs in the case. The Palms filed a two-count complaint against Grinnell Corporation for breach of express warranty and breach of implied warranty under section 718.203(2) of the Florida Condominium Act. See § 718.203(2), Fla. Stat. (2005). The Palms contends that Grinnell installed defective fire sprinkler pipes at its condominium in Fort Lauderdale.
The complaint alleged that the sprinkler pipe failure damaged the mechanical, electrical, and plumbing elements of the condominium, as well as the personal property and interiors of units occupied by unit owners. The Palms further contended that the pipe failure damaged its reputation as a developer, as evidenced by the steep decline in its condominium sales. Grinnell replaced the defective pipes and compensated The Palms for all damages except the damages caused to its reputation.
Grinnell filed a second amended answer alleging nineteen affirmative defenses.[1] *890 Grinnell admitted that it "replaced all defective CPVC pipe installed as part of the fire sprinkler system," "as well as repairing the resulting damage to elements of the Condominium, the personal property and interior finishes." In general, Grinnell denied that the pipe failure damaged The Palms' reputation as a developer and asserted that it had not compensated it for damage to reputation and loss of sales because there was no legal obligation to do so.
The Palms served Grinnell with a first set of interrogatories, which sought to explore denials made[2] and affirmative defenses raised in the second amended answer. The form of the interrogatories was the same; each asked for a statement of "all facts supporting" a denial or affirmative defense and then requested the identification of "any records that support those facts and every person who has knowledge of those facts."
Each of Grinnell's answers to the First Set of Interrogatories set forth the following objection:
Defendant objects to Interrogatory No. [1-25] on the grounds that it requires counsel for the Defendant to review and evaluate all facts known to date and disclose those specific facts that counsel believes support [the denial or affirmative defense]. As such, this interrogatory seeks disclosure of the attorney's mental processes and is protected work product beyond the scope of permissible discovery.
In addition to this boilerplate work product objection, Grinnell provided vague answers to the interrogatory questions, often contending that discovery was incomplete. No answer to any question identified any person who had knowledge of a fact or affirmative defense.
The Palms' first request for production of documents included the request that Grinnell produce all documents that "supported" twelve of its affirmative defenses.
Grinnell served a supplemental response to The Palms' first request for production of documents. With respect to the request for documents supporting the twelve affirmative defenses, Grinnell indicated that the documents had been "previously produced to Plaintiffs, have been obtained from third parties or are to be obtained from third parties . . . . To the extent that Plaintiffs have not obtained copies of documents produced by said third parties, Defendant will produce such copies to Plaintiffs at a mutually convenient time." In addition, Grinnell raised a work product objection to each response for documents "supporting" an affirmative defense:

*891 Defendant has produced its documents as they are kept in the usual course of business. Plaintiff has been receiving copies of documents produced by third parties to Defendant. To the extent that this request seeks documents produced in any other fashion or with greater specificity, Defendant objects because to do so would require Defendant's counsel to disclose their mental impressions, conclusions, opinions and/or legal theories which are protected from disclosure by the work product privilege.
The Palms moved to compel Grinnell to answer its interrogatories and request for production. Grinnell responded that The Palms was "seeking to uncover Defendant's attorney's mental impressions, conclusions, opinions, and/or legal theories related to the" case. Grinnell argued that to respond to the interrogatories, Defendant's counsel would be "required to review and evaluate all discovery completed to date and prepare a listing of each fact that Defendant's counsel believes supports the various specific issues and defenses in this case." Grinnell pointed out that it had produced "tens of thousands" of documents, and stated that it did "object . . . to reviewing, evaluating, and organizing the documents by factual and legal issue for the benefit" of The Palms.
The trial court granted the motion to compel and overruled Grinnell's work product objections. The oral ruling of the court required Grinnell to "come up with the documents and label the documents and support them as a broad general view," to identify the pages of deposition testimony that supported affirmative defenses, and to "delineate" its interrogatory answers with "a little more specificity." The court's written order adopted the court's oral ruling and required performance within 30 days.
"[R]eview by certiorari is appropriate when a discovery order departs from the essential requirements of law, causing material injury to a petitioner throughout the remainder of the proceedings below and effectively leaving no adequate remedy on appeal." Allstate Ins. Co. v. Langston, 655 So.2d 91, 94 (Fla.1995). To argue that the circuit court departed from the essential requirements of law, Grinnell primarily relies on two cases that apply the work product privilege, Northup v. Acken, 865 So.2d 1267 (Fla.2004), and Gabriel.
Traditionally, the work product privilege was applied to documents and other tangible things "prepared in anticipation of litigation or for trial." Fla. R. Civ. P. 1.280(b)(3). The work product of an attorney "is reflected . . . in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways . . . ." Northup, 865 So.2d at 1269 (quoting Hickman v. Taylor, 329 U.S. 495, 510-11, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). "Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference." Id. at 511, 67 S.Ct. 385.
In Northup, the supreme court applied the work product privilege to depositions that a plaintiff had compiled of a defense expert witness, which had been taken in other cases. The supreme court explained that "[i]n the process of litigation preparation," the plaintiff's attorneys "gathered deposition testimony" that the expert "had previously given in unrelated civil actions." Id. at 1268. The supreme court held that the work product privilege protected the depositions from disclosure in response to the defendant's request for production, unless *892 the plaintiff's attorneys "reasonably expected or intended" to use the depositions at trial, "for impeachment or otherwise." Id. at 1270-71.
Also, in Northup, the supreme court disapproved of "the broad sweep" of our decision in Gardner v. Manor Care of Boca Raton, Inc., 831 So.2d 676 (Fla. 4th DCA 2002). Gardner involved allegations of nursing home neglect and abuse. The defendant nursing home served interrogatories asking the plaintiff to evaluate (1) various surveys conducted at the nursing home, and (2) personnel files that the nursing home had produced in discovery and to indicate which surveys and documents from the files were relevant to the lawsuit. Id. at 676-77. Further, the defendant wanted the plaintiff to explain the basis for her determination of relevance. Id. We approved an order requiring the plaintiff's counsel to "cull through various surveys and personnel files to determine which ones" were relevant to the lawsuit, a grouping which may have indicated counsel's strategy. Id. at 678.
Northup held that we had gone "entirely too far" in Gardner. 865 So.2d at 1272. The supreme court wrote that
[t]he overriding touchstone in this area of civil discovery is that an attorney may not be compelled to disclose the mental impressions resulting from his or her investigations, labor, or legal analysis unless the product of such investigation itself is reasonably expected or intended to be presented to the court or before a jury at trial. Only at such time as the attorney should reasonably ascertain in good faith that the material may be used or disclosed at trial is he or she expected to reveal it to the opposing party. Because the Fourth District's Gardner decision conflicts with this principle, we must disapprove that portion of the opinion requiring counsel to evaluate the comparative relevance of documents for purposes of an opponent's discovery.

Id. (emphasis added).
Both Northup and Gardner concerned work that an attorney performed in preparing a case in litigation  the gathering of depositions for impeachment purposes and the evaluation of documents that had been produced during discovery. Northup's disapproval of Gardner was narrow, indicating that an attorney may not be required to "evaluate the comparative relevance of documents" that had been produced in discovery. Id. at 1272. In Gabriel, we seized on dicta to expand Northup beyond an attorney's preparation of a case to apply to the identification of the facts of the case itself. See id.
In Gabriel, plaintiffs sued the defendant bank over the handling of an investment account. 890 So.2d at 517. The bank filed a request for production seeking documents that "relate to or otherwise support" the "essential" allegations of the complaint. Id. The plaintiffs objected on the grounds of the attorney-client and work product privileges. Id. The trial court overruled their objection. See id. Quoting the language from Northup in the block quote set forth above, we granted a writ of certiorari based on our view that Northup prohibited "disclosure of documents unless the attorney expects or intends them to be used at trial." Id. at 518. We reasoned that an attorney's determination of whether a document relates to an allegation of the complaint would "possibly indicate[ ] counsel's strategy." Id.
Gabriel failed to sufficiently distinguish the facts of a case, and the documents that are a part of those facts, from (1) documents created and work done in preparation for litigation and (2) an attorney's evaluation of items produced in discovery that might disclose litigation strategy. *893 Only the latter two categories are protected by the work product privilege. A fair reading of Gabriel is that it precludes production of any document or fact unless a party reasonably expects or intends to present it at trial. Such a broad construction of the work product privilege interferes with the essential function of the discovery process of narrowing issues for trial.
"Our rules of civil procedure broadly allow parties to obtain discovery of `any matter, not privileged, that is relevant to the subject matter of the pending action,' whether the discovery would be admissible at trial, or is merely `reasonably calculated to lead to the discovery of admissible evidence.'" Allstate Ins. Co. v. Boecher, 733 So.2d 993, 995 (Fla.1999) (quoting Fla. R. Civ. P. 1.280(b)(1)). The primary purpose of discovery under the rules of procedure:
is to prevent the use of surprise, trickery, bluff and legal gymnastics. Revelation through discovery procedures of the strength and weakness of each side before trial encourages settlement of cases and avoids costly litigation. Each side can make an intelligent evaluation of the entire case and may better anticipate the ultimate results.
Surf Drugs, Inc. v. Vermette, 236 So.2d 108, 111 (Fla.1970), quoted with approval in Northup, 865 So.2d at 1270. Because the rule contemplates that a party may ask about matters "relevant to the subject matter of a pending action," it is clear that the concept of "relevance" is appropriate in framing discovery requests. If the work product privilege applied to an attorney's decision that a fact or document was relevant to a claim or defense, then the mechanics of discovery which have been in place for over 50 years would come to a screeching halt.
In 1956, the supreme court approved an interrogatory similar to those at issue in this case. In Dupree v. Better Way, Inc., 86 So.2d 425 (Fla.1956), the defendant propounded an interrogatory to the plaintiff asking for the "names and addresses of any other persons believed by you or known by you or your attorney to have knowledge concerning facts pertaining to the [ ] accident." Id. at 426. The supreme court held that the information sought was not protected as work product, stating that the interrogatory was "well within" the scope of discovery permitted by the civil rule, which included any non-privileged matter "relevant to the subject matter involved in the pending action." Id. (quoting Fla. R. iv. P. 1.21(b)).
We see no difference between a fact "pertaining" to an incident under Dupree, and a document or fact "supporting" an affirmative defense, which was the phrasing used in the interrogatories and request for production in the case at bar. Our experience is that fact discovery has been conducted consistent with Dupree for many years. As a case involving an attorney's preparation of a case for trial, and not discovery of the core facts of a case, Northup did not cite Dupree. The supreme court "does not intentionally overrule itself sub silentio." Puryear v. State, 810 So.2d 901, 905 (Fla.2002). Our apparent extension of Northup in Gabriel was in conflict with Dupree and is therefore erroneous.
The supreme court in Northup relied on the seminal case of Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), where the United States Supreme Court considered the work product privilege as it applied to oral and written statements of witnesses, and other information, "secured by an adverse party's counsel in the course of preparation for possible litigation after a claim has arisen." Id. at *894 497, 67 S.Ct. 385. The Supreme Court discussed the role of discovery where the rules "restrict the pleadings to the task of general notice-giving":
The various instruments of discovery now serve (1) as a device . . . to narrow and clarify the basic issues between the parties, and (2) as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to those issues. Thus civil trials in the federal courts no longer need be carried on in the dark. The way is now clear, consistent with recognized privileges, for the parties to obtain the fullest possible knowledge of the issues and facts before trial.
Id. at 501, 67 S.Ct. 385; see Dodson v. Persell, 390 So.2d 704, 707 (Fla.1980) (supreme court observed that one purpose of civil discovery was to abolish the tactical element of surprise in our adversary trial process). The supreme court distinguished "an ordinary request for relevant, non-privileged facts in the possession of his adversaries or their counsel" from statements taken from witnesses in preparation for trial. Hickman, 329 U.S. at 508, 67 S.Ct. 385. Finding such statements to be privileged "does not mean that any material, non-privileged facts can be hidden" from an opponent. Id. at 513, 67 S.Ct. 385.
Since Hickman, the federal courts have consistently held that:
[T]he work product concept furnishes no shield against discovery, by interrogatories or by deposition, of the facts that the adverse party's lawyer has learned, or the persons from whom he has learned such facts, or the existence or nonexistence of documents, even though the documents themselves may not be subject to discovery.
Ford v. Philips Elecs. Instruments Co., 82 F.R.D. 359, 360 (E.D.Pa.1979) (quoting 8 WRIGHT & MILLER, FEDERAL PRACTICE & PROCEDURE § 2023, at 194 (1970)); see also United States v. Pepper's Steel & Alloys, Inc., 132 F.R.D. 695, 697 (S.D.Fla.1990) (where court observed that "[f]acts gathered from documents by a party's representative are not protected as `fact work product'") (internal citations omitted). "Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product." Resolution Trust Corp. v. Dabney, 73 F.3d 262, 266 (10th Cir.1995). Thus a party may properly "inquire into the identity and location of persons having knowledge of relevant facts." Besly-Welles Corp. v. Balax, Inc., 43 F.R.D. 368, 371 (E.D.Wis.1968).
Two cases demonstrate the propriety of The Palms' interrogatories in this case. Hartsfield v. Gulf Oil Corp., 29 F.R.D. 163 (E.D.Pa.1962), was a lawsuit that concerned the death of a seaman. The complaint contained general allegations of the defendant's negligence and the unseaworthiness of a vessel. The defendant propounded interrogatories directed at the allegations of the complaint, which asked the plaintiff to "[s]tate in detail the facts or information supporting [each] allegation or upon which [the] allegation is based." Id. at 164. The plaintiff raised a work product objection to the interrogatories, but the court overruled it, holding:
The rule which precludes one party from obtaining the work product of his opponent's lawyer is inapplicable. For it is everyday experience that the operation of the trained mind of the lawyer is required to formulate the pleadings and the answers to instruments of discovery such as interrogatories. Even the bare allegation of negligence is the ultimate product of the play of the lawyer's mind *895 in marshalling the facts and measuring them by the legal standard of due care. Acceptance of plaintiff's contention would be to adopt an unrealistic view of litigation and to ignore the role of the lawyer in carrying it forward.
Id. at 165.
A second case approving an interrogatory similar to those in this case is Equal Employment Opportunity Commission v. Jewel Food Stores, Inc., 231 F.R.D. 343 (N.D.Ill.2005). The EEOC filed an interrogatory asking the defendant to "[i]dentify each person who may have knowledge or information supporting or relating to any of the allegations, claims or defenses asserted in this case and for each person describe in detail what knowledge or information each person is believed to have." Id. at 345. The court overruled the defendant's work product objection to this and other interrogatories. Citing the well-settled line of authority set forth above, the court wrote that the work product doctrine "does not protect factual information that a lawyer obtains when investigating a case." Id. at 346. The court observed that the interrogatories did not ask the defendant to "categorize what information might be helpful or harmful to the claims or defenses of the parties." Id. The interrogatories merely asked for information "concerning . . . supporting or relating to. . . the allegations, claims[,] or defenses. That kind of factual information is routinely sought in discovery and may not be withheld from production on the basis of work product." Id.
Like the interrogatories in Dupree, Hartsfield, and Jewel Food Stores, the interrogatories in this case sought disclosure of discoverable facts under rule 1.280(b)(1). As The Palms argued below, the purpose of the requests was to narrow and clarify the issues, and to ascertain the facts in support of the defenses and denials that were pleaded in a summary fashion. Without violating the work product privilege, a litigant may be required in an interrogatory to specify the facts supporting a claim or defense. We therefore hold that the trial court's order requiring greater specificity in answering the interrogatories was proper, so that there was no departure from the essential requirements of law.
We quash that portion of the trial court's order directed at the response to request for production requiring that Grinnell (1) "label the documents [already produced] and support them as a broad general view," and (2) identify the pages of deposition testimony that supported various affirmative defenses. Florida Rule of Civil Procedure 1.350(b) requires that a response under the rule only produce items "as they are kept in the usual course of business or . . . identify them to correspond with the categories in the request." Going beyond what is required in the rule, the order compels Grinnell to label and classify depositions already taken and documents already produced, as they pertain to issues in the case. It was this type of order in Gardner that the supreme court disapproved in Northup.
We grant the petition for writ of certiorari in part, deny it in part, and recede from Gabriel v. Northern Trust Bank of Florida to the extent that it is inconsistent with this opinion.
STEVENSON, C.J., GUNTHER, STONE, WARNER, POLEN, SHAHOOD, TAYLOR, HAZOURI, and MAY, JJ., concur.
KLEIN, J., concurs specially with opinion in which FARMER, J., concurs.
KLEIN, J., concurring specially.
I agree entirely with the majority opinion. I am writing to explain why, as a *896 member of the panel in Gabriel v. Northern Trust Bank of Florida, 890 So.2d 517 (Fla. 4th DCA 2005), I now believe we misapplied Northup v. Acken, 865 So.2d 1267 (Fla.2004) in Gabriel.
In Gabriel the defendant requested the plaintiff to produce "all documents that relate to or otherwise support" each essential allegation in the complaint. We concluded in Gabriel, based on Northup's, disapproval of our decision in Gardner v. Manor Care of Boca Raton, Inc., 831 So.2d 676 (Fla. 4th DCA 2002), that having to review documents in order to determine whether they supported allegations in the complaint would involve work product. Gardner, however, did not involve a request to produce.
In Gardner the defendant nursing home asked plaintiff if plaintiff contended that personnel files of nursing home employees, which plaintiff had obtained from the nursing home, were relevant to the issues involved in plaintiff's case, and how they were relevant. In contrast, in Gabriel, defendant was merely seeking to have plaintiff produce all documents relating to or otherwise supporting the allegations of the complaint. I have been unable to find a single Florida decision holding that the type of request for production used in Gabriel invades work product, except for Bishop ex rel. Adult Comprehensive Protective Services, Inc., v. Polles, 872 So.2d 272 (Fla. 2d DCA 2004).
In Bishop the defendant asked the plaintiff to produce documents "which may contain information pertaining to or evidencing any of the matters raised in the Complaint or pertaining to or evidencing any act or omission on the part of" defendant. The court, relying on Northup, concluded that the request was too broad, under the work product rule, because it included documents that the plaintiff "might conceivably offer as evidence at trial."
Florida Supreme Court decisions applying the work product doctrine invariably rely on federal law, specifically Hickman v. Taylor, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); Northup, 865 So.2d at 1269; Surf Drugs, Inc. v. Vermette, 236 So.2d 108, 113 (Fla.1970). Federal Rule of Civil Procedure 26(a)(1)(B) requires each party to furnish other parties, without waiting for a discovery request, the following information:
a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment.
This is essentially the same information we found to be work product in Gabriel, and which the second district found to be work product in Bishop.
Although our conclusion in the present case is consistent with the federal rules, I would not want to leave the impression that the federal courts agree on the application of the work product doctrine to requests for production of documents. As law professor Charles P. Cercone demonstrates in his article regarding requests for production of documents compiled by counsel for review by fact witnesses prior to a deposition, federal decisions applying work product are not uniform. Charles P. Cercone, The War Against Work Product Abuse: Exposing the Legal Alchemy of Document Compilations as Work Product, 64 U. Pitt. L.Rev. 639 (Summer 2003). Professor Cercone demonstrates that none of the reasons behind the creation of the work product doctrine would justify protecting the compilation of documents by counsel to prepare a fact witness for a *897 deposition, even though some courts have done so.
FARMER, J., concurs.
NOTES
[1] The affirmative defenses, along with the paragraph number from the second amended answer are as follows: (29) failure to state a cause of action; (30) failure to mitigate damages; (31) the damages "were the result of independent and intervening causes;" (32) express warranty limited plaintiffs' damage remedy; (33) damages caused by plaintiffs' "own actions and/or omissions"; (34) damages caused by acts of third parties; (35) estoppel of express warranty claim by virtue of Plaintiffs' acceptance of repairs and replacement from defendant; (36) waiver of express warranty, by acceptance of repair and replacement; (37) estoppel of implied warranty claim by virtue of Plaintiffs' acceptance of repairs and replacement; (38) waiver of implied warranty; (39) set-off from collateral sources; (40) lack of privity of plaintiff Plaza Properties Group bars claims for breach of express and (41) implied warranty; (42) accord and satisfaction; (43) defendant did not breach warranty; (44) defendant has "repaired each of the complained-of problems"; (45) defendant has "fully complied with its warranty obligations;"; (46) lack of standing to assert claims for express and (47) implied warranty. In this footnote we have merely described what Grinnell raised as affirmative defenses. We do not pass on whether the items listed are true affirmative defenses, or merely matters of denial.
[2] For example, Grinnell denied the allegation in paragraph 12 of the complaint that the pipe failure "caused damage to [The Palms'] reputation as developers" and in paragraph 15 of the complaint that all "conditions precedent to bringing this action have been performed and/or waived."