# Supreme Court of Florida

_____

No. SC15-1086
_____

**HEATHER WORLEY,**
Petitioner,

vs.

**CENTRAL FLORIDA YOUNG MEN'S CHRISTIAN ASS'N, INC.,**
Respondent.

[April 13, 2017]

QUINCE, J.

We have for review the decision of the Fifth District Court of Appeal in Worley v. Central Florida Young Men's Christian Ass'n, Inc., 163 So. 3d 1240 (Fla. 5th DCA 2015), in which the district court certified conflict with Burt v. Government Employees Ins. Co., 603 So. 2d 125 (Fla. 2d DCA 1992), regarding whether the attorney-client privilege protects a party from being required to disclose that his or her attorney referred the party to a physician for treatment. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons that follow, we conclude that the question implicates a confidential communication between the attorney and the client and is therefore protected. Accordingly, we quash the

decision of the Fifth District and approve the decision of the Second District Court of Appeal.

## FACTS

In its opinion granting certiorari review of the trial court's order on discovery, the Fifth District set forth the relevant facts:

> After Worley fell in YMCA's parking lot, she twice went to the emergency room of Florida Hospital East, where she was eventually advised to see a specialist concerning pain in her right knee. However, according to Worley, she did not go to a specialist for a month or two after the accident because she did not have enough money or any health insurance. Instead, she "started seeking out representation." After Worley retained Morgan & Morgan, various doctors from Sea Spine Orthopedic Institute, Underwood Surgery Center, and Sanctuary Surgical & Anesthesia treated Worley. Morgan & Morgan subsequently filed a negligence suit against YMCA on behalf of Worley, seeking to recover damages, including the costs of her treatment from those healthcare providers.

Worley, 163 So. 3d at 1242. During discovery of this "relatively routine trip-and-fall case," Central Florida Young Men's Christian Association, Inc. (YMCA), repeatedly attempted to discover the relationship between Worley's law firm, Morgan & Morgan, and her treating physicians. Id.

At Worley's initial deposition, YMCA asked if she was referred to her specialists by her attorneys, to which Worley's counsel objected on the ground of attorney-client privilege. Id. YMCA then propounded to Worley three sets of

- 2 -

Boecher[1] interrogatories, directed to specific doctors employed by Sea Spine, Underwood Surgery Center, and Sanctuary Surgical & Anesthesia, and a supplemental request to produce, directed to Morgan & Morgan, in an effort to establish the existence of a referral relationship between Worley's attorneys and her treating physicians. 163 So. 3d at 1242-43. These efforts were based on YMCA's suspicions that there was a "cozy agreement" between Morgan & Morgan and the physicians, due to the amounts of Worley's medical bills. Id. at 1243.

In response to YMCA's interrogatories and supplemental request to produce, Worley argued that the requests were "overbroad, vague, unduly and financially burdensome, irrelevant and in violation [of] allowable discovery pursuant to Florida Rule of Civil Procedure 1.280(b)(4)." Id. Worley also contended that Morgan & Morgan does not maintain "information for treating physicians as in this matter, or otherwise." Id. Despite this, at a hearing concerning Worley's objections, the trial court only sustained Worley's objection to the question regarding whether she was referred to the doctors by her attorneys and "did not address Worley's objections to YMCA's other outstanding discovery requests at that time." Id. at 1244.

---

1. Allstate Ins. Co. v. Boecher, 733 So. 2d 993 (Fla. 1999).

At a second deposition, YMCA again asked Worley how she was referred to her doctor, and again Worley's attorney objected on the ground of attorney-client privilege.  Id.  Following the deposition, YMCA filed a "Motion to Compel Better Answers to Boecher Interrogatories and Supplemental Request for Production."  Id.  This prompted a second hearing before the trial court, where Worley was required to produce, within 30 days, two types of discovery materials for the time period between three years prior to and six months after December 4, 2012:

> [1] complete copies of any and all documents reflecting formal or informal agreements, arrangements, and understandings regarding the billing for patients or any direct or indirect referral of a client by any attorney employed by or affiliated with Morgan & Morgan (whether currently or formerly employed by or affiliated with Morgan & Morgan) to any of the following entities or persons: Sea Spine Orthopedic Institute (or its doctors); Underwood Surgery Center (or its doctors); Physicians Surgical Group (or its doctors); and Sanctuary Surgical and Anesthesia (or its doctors), and vice versa [; and]
>
> [2] the names of any and all cases (including plaintiff, defendant, court and case number) where a client was referred directly or indirectly by any attorney employed by or affiliated with Morgan & Morgan (whether currently or formerly employed by or affiliated with Morgan & Morgan) to any of the following entities or persons: Sea Spine Orthopedic Institute (or its doctors); Underwood Surgery Center (or its doctors); Physicians Surgical Group (or its doctors); and Sanctuary Surgical and Anesthesia (or its doctors), and vice versa.

Id. Additionally, the trial court ordered that "[i]f the health care provider doesn't have it, then the law firm is to produce it," but did not specify which party had to incur the costs of complying with the order. Id.

In its motion for reconsideration of the trial court's order, Worley argued that the information was protected by attorney-client privilege and that compliance with the order "would be overly burdensome, if not impossible." Id. at 1245. In support of the latter argument, Worley provided two affidavits. Id. The first, by Deborah Parrott, the Chief Financial Officer (CFO) of Morgan & Morgan, stated that there were no documents "kept or maintained by Morgan & Morgan that address the information sought by YMCA." Id. The second, by Worley's attorney, stated that production of the requested materials would require over 200 hours of attorney review time "to manually search hard-copy files" at an estimated cost of $94,010. Id. The trial court summarily denied the motion. Id.

Worley then filed a petition for writ of certiorari with the Fifth District. Id. Worley's main claim was that the trial court order requires the production of information protected by the attorney-client privilege.[2] Id. In denying Worley's

---

2. Additionally, Worley argued that the trial court order (1) requires Worley to produce documents that do not exist; (2) requires Morgan & Morgan, a nonparty, to produce the information; (3) requires Worley or Morgan & Morgan to engage in an unduly and financially burdensome production; (4) requires Morgan & Morgan to incur all the costs associated with the production of the ordered

claim, the district court held "that it was appropriate for YMCA to ask Worley if she was referred to the relevant treating physicians by her counsel or her counsel's firm." Id. at 1247-48. It also found no error regarding the trial court's order for Worley to comply with YMCA's supplemental request to produce. Id. at 1249. Accordingly, the Fifth District denied Worley's certiorari petition and certified conflict with Burt "to the extent that it holds that the disclosure of a referral of a client by an attorney to a healthcare provider is always protected by the attorney-client privilege." Id. at 1250.

## ANALYSIS

The issue before this Court is whether the attorney-client privilege protects a plaintiff from disclosing that an attorney referred him or her to a doctor for treatment, or a law firm from producing documents related to a possible referral relationship between the firm and its client's treating physicians. However, resolution of this issue will require us to first consider another issue: whether the financial relationship between a plaintiff's law firm and the plaintiff's treating physician is discoverable. In its decision approving the order, the Fifth District relied on district court decisions that have held that the financial relationship between a law firm and a plaintiff's treating physician is discoverable, pursuant to

discovery; and (5) expands the scope of bias-related discovery that is otherwise permitted. Id. at 1245.

our decision in <u>Boecher</u>, if evidence of a referral relationship can be shown. <u>See</u> <u>Worley</u>, 163 So. 3d at 1246 (citing <u>Brown v. Mittelman</u>, 152 So. 3d 602 (Fla. 4th DCA 2014), and <u>Steinger, Iscoe & Greene, P.A. v. GEICO Gen. Ins. Co.</u>, 103 So. 3d 200 (Fla. 4th DCA 2012)).

We disagree that <u>Boecher</u> is applicable and, accordingly, disagree with the reasoning of these decisions. In <u>Boecher</u>, we considered whether a party could obtain discovery from the opposing party regarding the extent of that party's relationship with an expert. <u>Boecher</u>, 733 So. 2d at 994. In that case, the insured sought to discover from the insurance company the extent of its financial relationship with the expert witness that the insurance company intended to call at trial to dispute causation. <u>Id.</u> In concluding that the discovery was permissible, we recognized our earlier decision in <u>Elkins v. Syken</u>, 672 So. 2d 517 (Fla. 1996). There, experts retained to provide compulsory medical examinations were ordered to produce expansive discovery of their private financial information, including tax returns. <u>Id.</u> at 520. We found such invasive and harassing discovery to be impermissible because it threatened to chill the willingness of experts to become involved in litigation. <u>Id.</u> at 522. In response to this concern, we adopted Florida Rule of Civil Procedure 1.280(b)(5)(A)(iii)[3] in order "to avoid annoyance,

---

3. Essentially, the rule provides that a party may only obtain discovery of (1) the scope of an expert's employment in the pending case and compensation for such service, (2) the expert's general litigation experience, (3) other cases, within a

- 7 -

embarrassment, and undue expense" to experts.  Boecher, 733 So. 2d at 998

(quoting Fla. R. Civ. P. 1.280 committee notes (1996)).  However, because the

discovery sought in Boecher was "directed to a party about the extent of that

party's relationship with a particular expert," we found that the balance of interests

shifted in favor of allowing the discovery.  Id. at 997.

Since then, district courts have extended Boecher to allow discovery of the

financial relationship between law firms and treating physicians.  See Worley, 163

So. 3d at 1246 ("In Florida, it is well established that the financial relationship

between the law firm and the treating physician is not privileged and is relevant to

show bias."); Brown, 152 So. 3d at 604 ("The financial relationship between the

treating doctor and the plaintiff's attorneys in present and past cases creates the

potential for bias and discovery of such a relationship is permissible."); Lytal,

Reiter, Smith, Ivey & Fronrath, L.L.P. v. Malay, 133 So. 3d 1178 (Fla. 4th DCA

2014) ("A law firm's financial relationship with a doctor is discoverable on the

issue of bias."); Steinger, 103 So. 3d at 205 ("[T]he defendant is entitled to

discover information regarding the extent of the relationship between the law firm

and the doctor.").  However, contrary to these decisions, we find that the

_____

reasonable time period, in which the expert has testified, and (4) an approximate
percentage of time that the expert serves as an expert witness.  Financial and
business records may only be requested under "the most unusual or compelling
circumstances."  Fla. R. Civ. P. 1.280(b)(5)(A)(iii).

relationship between a law firm and a plaintiff's treating physician is not analogous to the relationship between a party and its retained expert.

First, and most obviously, the law firm is not a party to the litigation. In Boecher, the insured sought discovery from the other party, in that case Allstate Insurance, regarding the financial relationship Allstate had with its hired expert. Boecher, 733 So. 2d at 994. In the instant case, YMCA is seeking discovery of the relationship between Morgan & Morgan, a non-party, and Worley's treating physicians. Furthermore, Boecher dealt with the discovery of experts who had been hired for the purposes of litigation. Treating physicians, however, "[do] not acquire [their] expert knowledge for the purpose of litigation, but rather simply in the course of attempting to make [their] patient[s] well." Frantz v. Golebiewski, 407 So. 2d 283, 285 (Fla. 3d DCA 1981). Moreover, they "typically testif[y] . . . concerning [their] . . . own medical performance on a particular occasion and [do] not opin[e] about the performance of another." Fittipaldi USA, Inc. v. Castroneves, 905 So. 2d 182, 186 (Fla. 3d DCA 2005).

We recognize that the evidence code allows a party to attack a witness's credibility based on bias. § 90.608(2), Fla. Stat. (2015). We also agree that "a treating physician, like any other witness, is subject to impeachment based on bias." Steinger, 103 So. 3d at 203. However, bias on the part of the treating

physician can be established by providing evidence of a letter of protection (LOP),[4] which may demonstrate that the physician has an interest in the outcome of the litigation. In the instant case, Worley was treated by all of her specialists pursuant to letters of protection. Bias may also be established by providing evidence that the physician's practice was based entirely on patients treated pursuant to LOPs, as was found in the instant case. Specifically, a Sea Spine employee testified during depositions that at the time of Worley's treatment, its entire practice was based on patients treated pursuant to LOPs. Additionally, medical bills that are higher than normal can be presented to dispute the physician's testimony regarding the necessity of treatment and the appropriate amount of damages.

Allowing further discovery into a possible relationship between the physician and the plaintiff's law firm would only serve to uncover evidence that, even if relevant, would require the production of communications and materials

---

4. "A letter of protection is a document sent by an attorney on a client's behalf to a health-care provider when the client needs medical treatment, but does not have insurance. Generally, the letter states that the client is involved in a court case and seeks an agreement from the medical provider to treat the client in exchange for deferred payment of the provider's bill from the proceeds of [a] settlement or award; and typically, if the client does not obtain a favorable recovery, the client is still liable to pay the provider's bills." Caroline C. Pace, Tort Recovery for Medicare Beneficiaries: Procedures, Pitfalls and Potential Values, 49 Hous. Law. 24, 27 (2012).

that are protected by attorney-client privilege. As mentioned previously, courts that have allowed this type of discovery have first required evidence of a referral relationship between the law firm and the treating physician. See Brown, 152 So. 3d at 605 ("In cases where there is evidence of a referral relationship, more extensive financial discovery may be appropriate from both the law firm and the doctor."); see also Steinger, 103 So. 3d at 206 ("Once there is evidence that a referral relationship exists, discovery from the law firm may be appropriate . . . ."). In the instant case, the Fifth District stated that in order to establish that a referral has occurred, discovery should first be sought from the party, the treating physician, or other witnesses. Worley, 163 So. 3d at 1247. Finding that YMCA had "exhausted all other avenues without success," the court held that it was appropriate to ask Worley if she had been referred to her doctor for treatment. Id. at 1248.

Which brings us to the conflict issue before this Court: whether the attorney-client privilege precludes defense counsel from asking a plaintiff whether his or her attorney referred the plaintiff to a physician for treatment. In the conflict case, the Second District held that the question, "[D]id counsel refer [the plaintiff] to a particular physician[?]" sought "discovery of confidential communications constituting her attorney's advice regarding this lawsuit." Burt, 603 So. 2d at 125. In support of its conclusion, the district court reasoned, "The question does not

- 11 -

elicit the underlying fact of whether she saw a particular physician, but rather elicits whether she saw the physician at her attorney's request." Id. at 125-26. In the instant case, the Fifth District held that the Second District's decision had been "called into doubt by the subsequent case law approving discovery pertaining to the financial relationship between a plaintiff's treating physician and his or her lawyer(s)." Worley, 163 So. 3d at 1247. It appears that the district court supported its conclusion by reasoning that because YMCA could not obtain the information any other way, it could ask Worley directly.

We do not agree with the Fifth District's attempt to circumvent the attorney-client privilege out of perceived necessity. The attorney-client privilege is the oldest confidential communication privilege known in the common law. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). It is governed by the Florida Evidence Code, codified at section 90.502, Florida Statutes (2015). Under the Florida Evidence Code,

> A client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications when such other person learned of the communications because they were made in the rendition of legal services to the client.

§ 90.502(2), Fla. Stat. The Code further provides:

> A communication between lawyer and client is "confidential" if it is not intended to be disclosed to third persons other than:
>     1. Those to whom disclosure is in furtherance of the rendition of legal services to the client.

- 12 -

2. Those reasonably necessary for the transmission of the communication.

§ 90.502(1)(c), Fla. Stat. While section 90.502(4) provides several exceptions[5] to the attorney-client privilege, none of them apply to the instant case. The purpose of the attorney-client privilege is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Am. Tobacco Co. v. State,

---

5. This subsection provides:

(4) There is no lawyer-client privilege under this section when:

(a) The services of the lawyer were sought or obtained to enable or aid anyone to commit what the client knew was crime or fraud.

(b) A communication is relevant to an issue between parties who claim through the same deceased client.

(c) A communication is relevant to an issue of breach of duty by the lawyer to the client or by the client to the lawyer, arising from the lawyer-client relationship.

(d) A communication is relevant to an issue concerning the intention or competence of a client executing an attested document to which the lawyer is an attesting witness, or concerning the execution or attestation of the document.

(e) A communication is relevant to a matter of common interest between two or more clients, or their successors in interest, if the communication was made by any of them to a lawyer retained or consulted in common when offered in a civil action between the clients or their successors in interest.

§ 90.502(4), Fla. Stat. (2015).

- 13 -

697 So. 2d 1249, 1252 (Fla. 4th DCA 1997) (quoting Haines v. Liggett Group, Inc., 975 F.2d 81, 90 (3d Cir. 1992)). It is an interest traditionally deemed worthy of maximum legal protection. Id. Furthermore, it is not concerned with the litigation needs of the other party. See Quarles & Brady, LLP v. Birdsall, 802 So. 2d 1205, 1206 (Fla. 2d DCA 2002) ("[U]ndue hardship is not an exception, nor is disclosure permitted because the opposing party claims that the privileged information is necessary to prove their case.") (citation omitted)). Therefore, we find that the question of whether a plaintiff's attorney referred him or her to a doctor for treatment is protected by the attorney-client privilege.

Respondent argues that the lawyer's act of referring a client to a treating physician is an underlying fact, not a communication. We disagree. That the plaintiff was treated by a particular doctor is an underlying fact. That the plaintiff received a referral to see a particular doctor is also an underlying fact. However, whether the plaintiff's attorney requested that the client see a certain doctor requires the plaintiff to disclose a part of a communication that was held between the plaintiff and attorney, and we resist any attempts to separate the contents of communications to distinguish "facts" from privileged information. To hold otherwise would severely undermine the purpose of the privilege, which is to encourage the free flow of information between attorneys and their clients.

- 14 -

Accordingly, we find that the supplemental request to produce requires the production of privileged materials.

We also find that the supplemental request to produce is unduly burdensome. With its motion for reconsideration, Worley filed two affidavits with the trial court. Worley, 163 So. 3d at 1245. The affidavits stated that compliance with the order would require over 200 hours of attorney review at a cost of $94,010. Id. In Boecher, we explained that "certiorari is the appropriate remedy when a discovery order 'departs from the essential requirements of law and thus causes material injury to the petitioner throughout the remainder of the proceedings, effectively leaving no adequate remedy on appeal.' " Boecher, 733 So. 2d at 999 (quoting Allstate Ins. Co. v. Langston, 655 So. 2d 91, 95 (Fla. 1995)). In determining whether the ordered discovery would constitute an undue burden, courts look to the facts of each case. See Schering Corp. v. Thornton, 280 So. 2d 493, 494 (Fla. 4th DCA 1973) ("We do not here attempt to delineate the point at which the burden becomes unreasonable, and indeed, it must necessarily be a case by case decision under the applicable circumstances."). Here, we find that 200 hours and over $90,000 in costs to discover the collateral issue of bias in a case where the damages sought total $66,000 is unduly burdensome.

Even in cases where a plaintiff's medical bills appear to be inflated for the purposes of litigation, we do not believe that engaging in costly and time-

consuming discovery to uncover a "cozy agreement" between the law firm and a treating physician is the appropriate response. We are concerned that this type of discovery would have a chilling effect on doctors who may refuse to treat patients who could end up in litigation out of fear of becoming embroiled in the litigation themselves. Moreover, we worry that discovery orders such as the one in this case will inflate the costs of litigation to the point that some plaintiffs will be denied access to the courts, as attorneys will no longer be willing to advance these types of costs. Finally, attempting to discover this information requires the disclosure of materials that would otherwise be protected under the attorney-client privilege.

## CONCLUSION

Therefore, we quash the decision of the Fifth District Court and approve the decision of the Second District.

It is so ordered.

LABARGA, C.J., and PARIENTE, and LEWIS, JJ., concur.
POLSTON, J., dissents with an opinion, in which CANADY and LAWSON, JJ., concur.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

POLSTON, J., dissenting.

The majority holds that Central Florida YMCA is shielded, based on attorney-client privilege, from discovering whether Worley's lawyers, Morgan & Morgan, referred her to treating medical providers. The discovery is directed to

- 16 -

the referral relationship between Morgan & Morgan and the providers, including how much money the providers received from the firm and its clients. The financial relationship between a law firm and medical provider, including number of referrals, frequency, and financial benefit, is admissible evidence regarding the bias of a testifying medical provider. Accordingly, this information is relevant and subject to discovery.

The trial court ordered Worley to produce billing agreements between Morgan & Morgan and her treating medical providers and information from cases in which her firm referred other clients. On appeal, the Fifth District Court of Appeal in Worley v. Central Florida Young Men's Christian Ass'n, Inc., 163 So. 3d 1240 (Fla. 5th DCA 2015), correctly allowed discovery of this information under the existing rules of discovery, as balanced with other interests. I would approve its excellent analysis.

A lawyer's referral of a client to a treating medical provider is for the purpose of the client's medical care, not in furtherance of legal services. Therefore, the referral itself is not protected as an attorney-client privileged communication.

I respectfully dissent.

## I. Background

Worley was injured in a slip and fall at Central Florida YMCA. Id. at 1242. The Fifth District explained that "[d]uring the discovery process of this relatively routine trip-and-fall case, Morgan & Morgan has tenaciously opposed all attempts by the Respondent, Central Florida Young Men's Christian Association, Inc. ("YMCA"), to learn how Worley became a patient of certain medical care providers." Id. Specifically, YMCA seeks to discover information regarding the referral relationship between Morgan & Morgan and Worley's treating providers at Sea Spine Orthopedic Institute, Underwood Surgery Center, and Sanctuary Surgical & Anesthesia, including the amounts paid for clients of Morgan & Morgan. Id. at 1242-43. These treating providers will be giving expert opinions on matters including permanency of the injury as well as the reasonableness and necessity of her care and treatment.

YMCA contends, and has throughout the litigation, that these providers' bills are grossly inflated and do not reflect usual and customary billing practices within the medical community. "Worley concedes that YMCA has sufficient evidence to argue that the medical bills [from the treating physicians in this case] are unreasonable." Id. at 1243. As the majority states, "a Sea Spine employee testified during depositions that at the time of Worley's treatment, its entire practice was based on patients treated pursuant to LOPs," meaning letters of protection from lawyers. Majority op. at 10.

- 18 -

In response to the requested discovery, Worley's counsel provided an affidavit indicating that 238 Morgan & Morgan "Non-Party legal matters [involve Worley's] Treating Physicians." Worley, 163 So. 3d at 1245. However, Worley's counsel indicated that the specific requested information is not kept by Morgan & Morgan, and YMCA could obtain the information from the providers. Id. Then, "according to YMCA, Worley also filed a motion for protective order to prevent YMCA from obtaining this information from the billing custodians for Worley's treating physicians." Id. at 1243-44.

Worley objects to the discovery of whether Morgan & Morgan referred her to these medical providers based on attorney-client privilege. The Fifth District ruled this was not protected information subject to the attorney-client privilege:

> In general, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action. . . ." Fla. R. Civ. P. 1.280(b)(1). In Florida, it is well established that the financial relationship between the law firm and the treating physician is not privileged and is relevant to show potential bias. See Brown v. Mittelman, 152 So. 3d 602, 604 (Fla. 4th DCA 2014) ("The financial relationship between the treating doctor and the plaintiff's attorneys in present and past cases creates the potential for bias and discovery of such a relationship is permissible."); Lytal, Reiter, Smith, Ivey & Fronrath, L.L.P. v. Malay, 133 So. 3d 1178, 1178 (Fla. 4th DCA 2014) ("A law firm's financial relationship with a doctor is discoverable on the issue of bias." (citing [Morgan, Colling & Gilbert, P.A. v. ]Pope, 798 So. 2d [1, 2 (Fla. 2d DCA 2001)]})); Steinger, Iscoe & Greene, P.A. v. GEICO Gen. Ins. Co., 103 So. 3d 200, 204 (Fla. 4th DCA 2012) ("Thus, under ordinary circumstances, a defendant may discover from a plaintiff's treating physician the type of general financial bias information set out in Rule 1.280(b)(5)(A)(iii)."); Katzman v. Rediron Fabrication, Inc., 76 So. 3d

1060, 1064 (Fla. 4th DCA 2011) ("We agree that <u>Elkins</u> discovery should generally provide sufficient discovery into such financial bias. The discovery here is relevant to a discrete issue, whether the expert has recommended an allegedly unnecessary and costly procedure with greater frequency in litigation cases, and whether the expert, as a treating physician, allegedly overcharged for the medical services at issue in the lawsuit."); <u>see also</u> <u>Crawford v. McColister's Transp. Sys., Inc.</u>, 2013 WL 5687861, at *2 (S.D. Fla. Oct. 2, 2013) (stating that "the existence of an attorney client relationship is not usually itself privileged, and whether a Plaintiff was referred to a physician by her attorney is discoverable" (footnote omitted) (citing <u>Norfolk v. Comparato</u>, No. 11-81220-CIV, 2012 WL 3055675 (S.D. Fla. July 12, 2012))).

<u>Id.</u> at 1246 (footnote omitted).

The majority incorrectly rules otherwise and broadly holds that the attorney-client privilege protects the disclosure of whether the attorney referred the client to their physician for treatment.

## II. Evidence and Discovery Rules Require Discovery

Under our evidence and discovery rules, information reasonably calculated to lead to the discovery of the bias of a witness, including a financial incentive for testifying a certain way, should be discoverable. Specifically, this Court has explained that "[o]ur rules of civil procedure broadly allow parties to obtain discovery of 'any matter, not privileged, that is relevant to the subject matter of the pending action,' whether the discovery would be admissible at trial, or is merely 'reasonably calculated to lead to the discovery of admissible evidence.'" <u>Allstate</u>

Ins. Co. v. Boecher, 733 So. 2d 993, 995 (Fla. 1999) (quoting Fla. R. Civ. P. 1.280(b)(1)).

Furthermore, as Professor Ehrhardt explains, "[a]ll witnesses who testify during a trial place their credibility in issue." Charles W. Ehrhardt, Florida Evidence, § 608.1, at 619 (2016). Therefore, "[r]egardless of the subject matter of the witness's testimony, a party on cross-examination may inquire into matters that affect the truthfulness of the witness's testimony." Id. And section 90.608, Florida Statutes, provides that "[a]ny party, including the party calling the witness, may attack the credibility of a witness by . . . [s]howing that the witness is biased." "Included within the types of matters that demonstrate bias are those that relate to the interest of the witness, favoritism, and corruption." Ehrhardt, § 608.5, at 655.

The majority acknowledges that the evidence code allows a party to attack a witness's credibility based on bias and that a treating physician is subject to impeachment based on bias. See majority op. at 9 (citing § 90.608(2), Fla. Stat., and Steinger, 103 So. 3d at 203). But the majority then improperly draws the line of allowing bias to be shown by permitting only evidence of a letter of protection from the lawyer "which may demonstrate that the physician has an interest in the outcome of the litigation." Id. at 10. This letter of protection involves just the one case. Allowing the jury to consider just this limited financial interest of the one case completely ignores, and improperly limits, the ability to show bias of a

- 21 -

provider that may arise from a potentially very significant amount of compensation, and percentage of total business, from other cases brought to the provider by the law firm.

Additionally, the majority reasons that allowing discovery into a broader relationship between the physician and plaintiff's law firm may require production of communications and materials that are protected by attorney-client privilege. See id. at 10-11.  Indeed, section 90.502(2) provides that "[a] client has a privilege to refuse to disclose, and to prevent any other person from disclosing, the contents of confidential communications . . . because they were made in the rendition of legal services to the client."  However, as Professor Ehrhardt explains, "communications that do not involve legal advice are not protected."  Ehrhardt, § 502.5, at 451.  Therefore, if a communication is a recommendation of a physician from whom someone should seek medical treatment, the referral does not constitute protected legal advice.  See Hoch v. Rissman, Weisberg, Barrett, 742 So. 2d 451, 458 (Fla. 5th DCA 1999) ("Mere attendance of an attorney at a meeting, even where the meeting is held at the attorney's instance, does not render everything said or done at that meeting privileged.  For communications at a meeting to be privileged, they must relate to the acquisition or rendition of professional legal services and must have a confidential character." (citation omitted)); Watkins v. State, 516 So. 2d 1043, 1046 (Fla. 1st DCA 1987) (holding

that communication regarding trial dates was not privileged because it was not intended to not be disclosed to third parties); see also Ehrhardt, § 502.5, at 449 ("Matters which are not communications, e.g., how counsel was retained, are not protected by the attorney-client privilege.").

Moreover, the possibility of a matter involving attorney-client privileged information of course occurs with all discovery and is not a basis for completely disallowing permissible discovery. Instead, appropriate objections are made and an in camera review is conducted by the trial judge. See, e.g., Patrowicz v. Wolff, 110 So. 3d 973, 974 (Fla. 2d DCA 2013); Zanardi v. Zanardi, 647 So. 2d 298, 298 (Fla. 3d DCA 1994).

### III.  Boecher Requires this Discovery

Importantly, this Court in Boecher, 733 So. 2d at 994, required the disclosure of a financial relationship between a party insurance company and its witness. This Court explained that "[o]nly when all relevant facts are before the judge and jury can the 'search for truth and justice' be accomplished." Id. at 995 (quoting Dodson v. Persell, 390 So. 2d 704, 707 (Fla. 1980)).  Obviously, for all the following reasons, this information establishing a financial relationship between the insurance company and its witness pertains to the bias of the witness and is discoverable:

> The information sought here would reveal how often the expert testified on Allstate's behalf and how much money the expert made

- 23 -

from its relationship with Allstate. The information sought in this case does not just lead to the discovery of admissible information. The information requested is directly relevant to a party's efforts to demonstrate to the jury the witness's bias.

The more extensive the financial relationship between a party and a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing. A jury is entitled to know the extent of the financial connection between the party and the witness, and the cumulative amount a party has paid an expert during their relationship. A party is entitled to argue to the jury that a witness might be more likely to testify favorably on behalf of the party because of the witness's financial incentive to continue the financially advantageous relationship.

Any limitation on this inquiry has the potential for thwarting the truth-seeking function of the trial process. As we observed in [Government Employees Insurance Co. v. ]Krawzak, [675 So. 2d 115, 118 (Fla. 1996),] we take a "strong stand against charades in trials." []. To limit this discovery would potentially leave the jury with a false impression concerning the extent of the relationship between the witness and the party by allowing a party to present a witness as an independent witness when, in fact, there has been an extensive financial relationship between the party and the expert. This limitation thus has the potential for undermining the truth-seeking function and fairness of the trial. See Dosdourian[ v. Carsten], 624 So. 2d [241, 243 (Fla. 1993)]. Thus, we conclude that the jury's right to assess the potential bias of the expert outweighs any of the competing interests expressed in Elkins.

Id. at 997-98.

The majority distinguishes Boecher on the basis that the law firm is not a party to the litigation. Majority op. at 9. However, for all of the reasons described in Boecher, this Court should require the disclosure of a financial relationship between a party's law firm and its witnesses. It should treat the plaintiff's law firm the same as an insurance company for purposes of discovering and disclosing

- 24 -

potential bias. If a law firm routinely refers clients to the medical provider, and there is an "extensive [] financial relationship between a party [through its law firm] and a witness, the more it is likely that the witness has a vested interest in that financially beneficial relationship continuing." Boecher, 733 So. 2d at 997. The insurance company is a repeat player in the judicial system, and the witnesses it uses on a regular basis may have a financial incentive that a jury is entitled to know about and evaluate for potential bias. Substitute the phrase "plaintiff's law firm" in place of "insurance company," and the same is true here: The "plaintiff's law firm" is a repeat player in the judicial system, and the witnesses it uses on a regular basis may have a financial incentive that a jury is entitled to know about and evaluate for potential bias. See Sears v. Rutishauser, 466 N.E.2d 210, 214 (Ill. 1984) ("[A] medical expert may be cross-examined concerning the number and frequency of referrals from an attorney.").

Accordingly, this Court should apply Boecher in an even-handed manner to all litigants, no matter whether they are plaintiffs or defendants, and require this discovery.[6]

---

6. The majority also distinguishes Boecher on the basis that these are treating physicians rather than experts. Majority op. at 9. But these treating providers will be giving expert opinions, including expert opinions about permanency of the injury as well as the reasonableness and necessity of her care and treatment.

## IV. Kitchen Sink

The majority also finds in favor of Worley for a variety of additional reasons, including that the ordered discovery is unduly burdensome. Majority op. at 15. The trial court denied this burdensome claim. As indicated by the Fifth District, Worley may seek reasonable compensation for her costs at the end of the case. Worley, 163 So. 3d at 1249; see Topp Telecom, Inc. v. Atkins, 763 So. 2d 1197, 1200 n.5 (Fla. 4th DCA 2000) ("Of course the mere fact that a trial judge has allowed burdensome discovery to proceed does not forestall later reallocation of the costs incurred when the prevailing party seeks to tax costs at the end of the case. In taxing costs, the trial judge has considerable discretion and it is certainly within such discretion to determine at the end of the case that overly burdensome discovery requests by the losing party should be compensated to some extent by allowing specific requests for costs incurred thereby. It will be at this stage that the parties can have full review of the issues dealing with the allocation of those costs."). "To hold otherwise would essentially thwart the truth-seeking function highlighted in Boecher because it would allow a party to prevent disclosure of relevant information by arguing that it is too costly to provide, even though the greater the extent of the relationship between the party's law firm and the treating physicians, the more likely the opposing party could successfully argue bias or the

- 26 -

unreasonableness of the medical bills charged by the treating physicians." Worley, 163 So. 3d at 1250.

Additionally, the majority expresses its concern that the ordered discovery will have a chilling effect on doctors willing to testify. Majority op. at 16. However, this concern is without any supporting evidence. To the contrary, as indicated in the majority's opinion, the physicians group testified in this case that its whole practice is dependent on attorney letters of protection.

Finally, the majority worries that the costs of litigation will go to the point that some plaintiffs will be denied access to courts because lawyers will not take the cases and advance costs. Id. But this access to courts worry is completely baseless. Morgan & Morgan has not made any indication that it would not pursue this case or any others if required to comply with the court's discovery order.

Accordingly, the myriad other reasons the majority employs to prevent the permissible discovery in this case are baseless and without merit.

## V. Conclusion

Because the discovery ordered by the trial court is not attorney-client privileged communication, and because the discovery is required by an even-handed application of this Court's decision in Boecher, I would approve the Fifth District's decision. Therefore, I respectfully dissent.

CANADY and LAWSON, JJ., concur.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Fifth District - Case No. 5D14-3895

(Orange County)

Andrew Parker Felix and W. Clay Mitchell, Jr., of Morgan & Morgan, P.A., Orlando, Florida; and Celene H. Humphries, Philip J. Padovano, and Tracy S. Carlin of Brannock & Humphries, Tampa, Florida,

for Petitioner

Joseph R. Flood, Jr., Jessica C. Conner, and Lamar D. Oxford of Dean, Ringers, Morgan & Lawton, P.A., Orlando, Florida,

for Respondent

Andrew A. Harris of Burlington & Rockenbach, P.A., West Palm Beach, Florida,

for Amicus Curiae Florida Justice Association

Katherine E. Giddings, BCS, and Diane G. DeWolf of Akerman LLP, Tallahassee, Florida; David I. Spector of Akerman LLP, West Palm Beach, Florida; and William W. Large of Florida Justice Reform Institute, Tallahassee, Florida,

for Amicus Curiae Florida Justice Reform Institute

Sharon C. Degnan and Caryn L. Bellus of Kubicki Draper, P.A., Miami, Florida,

for Amicus Curiae Florida Defense Lawyers Association